**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X

ZURICH AMERICAN LIFE INSURANCE
COMPANY,

                          Plaintiff,

          v.

JON NAGEL,

                       Defendant.

------------------------------------------------------------- X

Civil Case No.: 1:20-cv-11091
(JSR)

 

 

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STRIKE AND MOTION TO DISMISS

**WIGDOR LLP**

Christine L. Hogan
John S. Crain

85 Fifth Avenue
New York, NY  10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
chogan@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... iii

I.      Preliminary Statement ................................................................................ 1

II.     Statement of Facts ...................................................................................... 2

III.    Argument – Motion to Strike .................................................................... 4

        A.      Standard Of Review ...................................................................... 4

        B.      Certain Paragraphs And Exhibit C To The SDNY Complaint Must Be
                Struck Pursuant to FRCP 12(f) Because They Contain Inadmissible
                Settlement Communications .......................................................... 5

IV.     Argument – Motion To Dismiss ............................................................... 7

        A.      Standard Of Review ...................................................................... 7

        B.      Zurich Fails To State a Claim for Breach Of Contract ................. 7

        C.      Zurich Fails To State A Claim for Breach Of Fiduciary Duty ...... 11

        D.      Zurich Fails To State A Claim Under The Defend Trade Secrets Act ..... 12

                1.      There Is No Allegation Of A "Trade Secret" With Independent
                        Economic Value ................................................................ 11

                2.      The Complaint Does Not Allege Acquisition Causing Actual
                        Damage ........................................................................... 15

                3.      The Complaint Does Not Allege Threatened Use Or Disclosure
                        Warranting An Injunction ................................................. 16

        E.      Zurich Fails To State An Unjust Enrichment Claim ...................... 17

                1.      Zurich's Unjust Enrichment Claim Is A Fraud Claim In Disguise
                        That Does Not Meet That Claim's Heightened Pleadings
                        Requirement .................................................................... 17

                2.      The Voluntary Payment Doctrine Bars Zurich's Recovery For
                        Unjust Enrichment ........................................................... 20

V.      CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott Lab'ys v. Adelphia Supply USA*,
 No. 15 Civ. 5826 (CBA) (LB), 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ............................. 18

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................... 7

*AUA Private Equity Partners, LLC v. Soto*,
 No. 17 Civ. 8035 (GHW), 2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018) ................................. 15

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,*
 No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ........................... 11

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................... 7

*Bolt Elec., Inc. v. City of New York*,
 223 F.3d 146 (2d Cir. 2000) ......................................................................................... 8

*Bramshill Invs., LLC v. Pullen*,
 No. CV 19-18288, 2020 WL 4581827 (D.N.J. Aug. 10, 2020) ................................................. 15

*Caputo v. Pfizer, Inc.*,
 267 F.3d 181 (2d Cir. 2001) ......................................................................................... 19

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002) ......................................................................................... 7

*Comprehensive Mental Assessment & Med. Care, P.C. v. Gusrae Kaplan Nusbaum, PLLC*,
 130 A.D.3d 670 (1st Dep't 2015) ................................................................................... 18

*Corsello v. Verizon New York, Inc.*,
 18 N.Y.3d 777 (2012) ................................................................................................. 18

*Cortec Indus., Inc. v. Sum Holding L.P.*,
 949 F.2d 42 (2d Cir. 1991) ........................................................................................... 7

*Cotiviti, Inc. v. Deagle*,
 No. 20 Civ. 2730 (ER), 2020 WL 6806434 (S.D.N.Y. Nov. 19, 2020) ................................... 16

*Democratic Nat'l Comm. v. Russian Fed'n*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019) ...................................................................... 12

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
  100 N.Y.2d 525 (2003) ............................................................................................ 20

*Elsevier Inc. v. Dr. Evidence, LLC*,
  No. 17 Civ. 5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018).................... 13

*Emigrant Bank v. UBS Real Est. Sec., Inc.*,
  49 A.D.3d 382 (1st Dep't 2008)............................................................................... 10

*Foster v. WNYC-TV*,
  No. 88 Civ. 4584 (JFK), 1989 WL 146277 (S.D.N.Y. Nov. 20, 1989) ...................... 5, 6, 7, 11

*Iacovacci v. Brevet Holdings, LLC*,
  437 F. Supp. 3d 367 (S.D.N.Y. 2020)...................................................................... 14

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995).......................................................................................... 7

*Jianjun Lou v. Trutex, Inc.*,
  872 F. Supp. 2d 344 (S.D.N.Y. 2012)........................................................................ 4

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y. 1992).................................................................................. 5

*Khodeir v. Sayyed*,
  323 F.R.D. 193 (S.D.N.Y. 2017) .............................................................................. 10

*Kumaran v. Northland Energy Trading, LLC*,
  No. 119 Civ. 8345 (MKV) (DCF), 2021 WL 797113 (S.D.N.Y. Feb. 26, 2021).................... 14

*Landmark Ventures, Inc. v. Wave Sys. Corp.*,
  No. 11 Civ.- 8440 (PAC), 2012 WL 3822624 (S.D.N.Y. Sept. 4, 2012) ................... 10

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976)....................................................................................... 4

*Lockheed Martin Corp. v. Aatlas Com. Inc.*,
  283 A.D.2d 801 (2001) .............................................................................................. 8

*Malvar Egerique v. Chowaiki*,
  No. 19 Civ. 3110 (KPF), 2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020) ................... 4

*Mtivity, Inc. v. Off. Depot, Inc.*,
  ---F. Supp. 3d---, No. 19 Civ. 5094 (FB) (RML), 2021 WL 969124 (E.D.N.Y. Mar. 16, 2021.
  ....................................................................................................................................... 16

*Paulino v. Conopco, Inc.*,
  No. 14 Civ. 5145 (JG) (RML), 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ....................... 18

*Samick Music Corp. v. Gordon*,
  No. SACV 20-395-GW-JDEX, 2020 WL 3210613 (C.D. Cal. Mar. 26, 2020) ................ 16, 17

*Second Source Funding, LLC v. Yellowstone Capital, LLC*,
  144 A.D.3d 445 (1st Dep't 2016) ........................................................................................ 8

*Trahan v. Lazar*,
  457 F. Supp. 3d 323 (S.D.N.Y. 2020) ................................................................................ 14

*TRB Acquisitions LLC v. Yedid*,
  No. 20 Civ. 0552 (JMF), 2021 WL 293122 (S.D.N.Y. Jan. 28, 2021) .................................... 14

*Tyman v. Pfizer, Inc.*,
  No. 16 Civ. 06941 (LTS) (BCM), 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017)................... 18

*U.S. ex rel. Heath v. AT & T, Inc.*,
  791 F.3d 112 (D.C. Cir. 2015) ........................................................................................... 19

*Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*,
  350 F. Supp. 3d 143 (E.D.N.Y. 2018).................................................................................. 14

*United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*,
  865 F.3d 71 (2d Cir. 2017).................................................................................................... 19

*United States v. Prevezon Holdings, Ltd.*,
  289 F. Supp. 3d 446 (S.D.N.Y. 2018).................................................................................... 8

*William Kaufman Org., Ltd. v. Graham & James, LLP*,
  269 A.D.2d 171 (1st Dep't 2000)........................................................................................ 11

## **Other Authorities**

18 U.S.C. § 1836(3)(A)(i) ........................................................................................................ 12

18 U.S.C. § 1836(B) ................................................................................................................ 12

18 U.S.C. § 1836(b)(1) ............................................................................................................ 12

18 U.S.C. § 1839(3) ................................................................................................................ 12

18 U.S.C. § 1839(5) ........................................................................................................ 15

18 U.S.C. § 1839(6)(A) ................................................................................................... 15

Federal Rule of Civil Procedure 9(b) ............................................................................. 19

Federal Rule of Civil Procedure 11 ............................................................................. 6, 9

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 1, 4, 7

Federal Rule of Civil Procedure 12(f) ...................................................................... 1, 4, 5

Restatement (Third) of Restitution and Unjust Enrichment § 3 (2011) .......................... 19

Rule 408 of the Federal Rules of Evidence ................................................................ 5, 6

Defendant Jon Nagel respectfully submits this memorandum of law in support of his (1) motion to strike portions of the Complaint (Dkt. No. 1) pursuant to Federal Rule of Civil Procedure 12(f), and (2) motion to dismiss all causes of action in the Complaint pursuant to FRCP 12(b)(6).

## I.    PRELIMINARY STATEMENT

After firing Nagel due to his age and in retaliation for his complaints of age discrimination, and being sued in state court, Zurich American Life Insurance Company ("Zurich" or the "Company") has brought this baseless lawsuit, with claims that are either dependent on wholly inadmissible settlement communications or fail as a matter of law.

Zurich alleges that Nagel breached a ten-year old confidentiality agreement, breached the fiduciary duties he owed it, and violated the federal Defend Trade Secrets Act ("DTSA") by sending emails from his work account to his personal email account while he was an employee of Zurich.  Zurich also alleges that Nagel unjustly enriched himself with unearned overtime via timecard fraud, a scheme that Zurich alleges it discovered accidentally seven years later, even though a manager of Zurich signed Nagel's timesheets throughout that period.

Because he did ***not*** violate his confidentiality agreement with Zurich, the Court should dismiss Zurich's breach of contract claim.  Moreover, since Zurich does not allege a "trade secret" with independent economic value, or meet the applicable tests for misappropriation, the court should dismiss Zurich's DTSA claim.  Finally, because Zurich's claims for breach of fiduciary duty and unjust enrichment attempt to duplicate or replace other causes of action, these claims too must be dismissed.

## II.   **STATEMENT OF FACTS**

Jon Nagel is a former employee of Zurich.[1]  From October 31, 2011 until the termination of his employment on November 5, 2020, Nagel worked for Zurich as a senior associate paralegal. (Declaration of Christine L. Hogan, Esq. ("Hogan Dec."), Ex. 1 ("SDNY Complaint"), ¶¶ 11, 32).

As a paralegal, Nagel worked for Zurich by supporting attorneys and management with corporate governance and regulatory compliance matters.  (*Id.* ¶¶ 11-12).  His job responsibilities included "preparing, reviewing and compiling Zurich Board of Directors and Audit Committee materials for quarterly meetings for Zurich and its related companies," which "would have included highly confidential information."  (*Id.* at ¶ 13).  Nagel was also "responsible for information related to the election of officers and directors for Zurich."  (*Id.*).

"Accordingly," and "in connection with his employment," Zurich required that Nagel sign the "Agreement Relating to Proprietary Information/ Equipment/ Work Development" upon hire. (*Id.* ¶ 14; *see also* Hogan Dec. Ex. 2 ("Agreement"), at 1, 3).  Pursuant to the Agreement, Nagel acknowledged that he would have access to "'information of a business nature including but not limited to, marketing, pricing, claims, financial, strategic, risk engineer, underwriting, employee data, and planning and organizational data.'"  (SDNY Complaint ¶ 15; Agreement ¶ I.A). Therefore, he agreed to:

> use my utmost diligence to guard and protect Proprietary Information which is proprietary to the Company . . . and I shall not, during and after my period of employment with the Company, disclose, use for myself or others, make unauthorized copies of, alter or modify in any way, or take with me such Proprietary Information.

---

[1]   The "facts" contained in this section are taken as true solely for the purposes of these Motions.

(Agreement ¶ I.B).   Nagel also agreed that he would "immediately return all Proprietary Information to the Company upon . . . termination of employment."   (SDNY Complaint ¶ 49; Agreement ¶ I.E).

On November 6, 2020, the day after Nagel's termination, Zurich mailed a letter to Nagel requesting, *inter alia*, that Nagel return all confidential and proprietary information to Zurich in light of his termination and pursuant to the Agreement.   (SDNY Complaint ¶¶ 33-34; *see also* Hogan Dec. Ex. 3 ("11/6/2020 Threat Letter"), at 2).   The letter specifically threatened Mr. Nagel with litigation if he did not comply with Zurich's demands.   (11/6/2020 Threat Letter, at 3).   The letter also gave Nagel until November 12, 2020 at 5pm CDT to respond.   (*Id.*).

On November 11, 2020, Thomas Budd, Esq., Clifton Budd & DeMaria, contacted opposing counsel as Nagel's attorney in response to the 11/6/2020 Threat Letter.   (Hogan Dec. Ex. 4 ("Budd Settlement Email Chain"), at 1).   He indicated that Nagel had his own potential legal claims against Zurich, and then made the following settlement overture:

> **Before starting a lawsuit** I believe it may be in everyone's interest **to evaluate the possibility of settlement**. A suit to recover the computer would likely involve a defense disclosing material on the computer which Mr. Nagel would need to copy since it arguably involves questionable activities by Zurich which Mr. Nagel brought to the Company's attention.
>
> **Mr. Nagel is perfectly willing to enter into a reasonable settlement** involving a reasonable severance pay, clearing his record with respect to his termination, protection of Pension rights etc. **In exchange** he would return the Company Computer and provide assurances that there is no Company material on his personal Computer.
>
> I have not delved further into the **terms of a satisfactory settlement** until I [sic] you have checked with your client as to **whether settlement is even in the cards**. Thank you.

(*Id.* at 1-2 (emphasis added)).

The parties did not settle, so on December 29, 2020, Jon Nagel filed a complaint in the Supreme Court of the State of New York, County of New York (Index No. 161329), alleging that Zurich American Life Insurance Company ("Zurich" or the "Company")[2] discriminated and retaliated against him when they terminated his employment three days before his 70th birthday and after multiple complaints of age discrimination.  (Hogan Dec. Ex. 5 ("State Complaint"), ¶ 1).[3]  At termination, Zurich had claimed that Nagel was being fired because he (1) had been billing the Company for time he did not actually work, and (2) improperly emailed confidential documents to himself.  (*Id.* ¶¶ 111-18).  This was pretext.  (*Id.* ¶118).

Just one day later, on December 30, 2020, Zurich filed a counter lawsuit against Nagel in this Court based on (1) the pretextual reasons given to Nagel for his termination, and (2) protected settlement communications that Nagel's former attorney initiated with opposing counsel.  (SDNY Complaint ¶¶ 46-50, 57, 65, 78).

## III.   ARGUMENT – MOTION TO STRIKE

### A.   Standard Of Review

FRCP 12(f) states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  In deciding such a motion, it is well settled that the motion will be granted if the moving party can show "that no evidence in support of the allegation would be admissible."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893

---

[2]      Along with other Zurich entities.

[3]      "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012) (taking judicial notice of a court order in a prior case); *accord Malvar Egerique v. Chowaiki*, No. 19 Civ. 3110 (KPF), 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020).

(2d Cir. 1976) (affirming district court's decision to strike a consent judgment as "immaterial" because it was inadmissible).

### B. Certain Paragraphs And Exhibit C To The SDNY Complaint Must Be Struck Pursuant To FRCP 12(f) Because They Contain Inadmissible Settlement Communications

Rule 408 of the Federal Rules of Evidence ("Fed. R. Ev.") states:

Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim . . . .

Since "[s]ettlement negotiations are inadmissible to show fault," under Rule 408, then they "may be stricken from a complaint as immaterial and potentially prejudicial." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992), *aff'd sub nom.*, *Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994) (granting motion to strike references to settlement discussions in the complaint). *See also Foster v. WNYC-TV*, No. 88 Civ. 4584 (JFK), 1989 WL 146277, at *6 (S.D.N.Y. Nov. 20, 1989) ("In addition, plaintiff's inclusion of letters of settlement as exhibits 2 through 6 in its opposing papers clearly violates Fed. R. Ev. 408. Rule 408 states that any statements reflecting settlement negotiations are inadmissible as evidence. The reason for this rule is to promote settlements without hindering free communication between the parties."

In the present case, all references to the Budd Settlement Email Chain (SDNY Complaint ¶¶ 35-39, 48, 57) and the Budd Settlement Email Chain itself (Exhibit C to the Complaint) are

inadmissible.  Mr. Budd used clear and precise language to indicate that he was engaging in settlement negotiations, which are protected by Rule 408:

- Stating up front that "it may be in everyone's interest to evaluate the possibility of settlement";
- Asserting that "Mr. Nagel is perfectly willing to enter into a reasonable settlement";
- Offering to agree to certain of Zurich's terms (return of company computer and assurances) in exchange for potential consideration (severance, clearing Nagel's record); and
- Offering to delve into "terms of a satisfactory settlement" after opposing counsel knew "whether settlement is even in the cards."

(Budd Settlement Email Chain, at 1-2).

Zurich, however, is specifically trying to use Budd's offer of settlement to prove the validity of its breach of contract and fiduciary duty claims, in violation of Rule 408.  (SDNY Complaint ¶¶ 35-39, 48, 57).  Specifically, Zurich claims that Mr. Budd, on Nagel's behalf, "declined to return the documents or submit Nagel's computer to forensic inspection" and stated that Nagel would only do so if Zurich paid him severance and cleared his employment record.  (*Id.* ¶¶ 36-37).  This, Zurich claims, demonstrates that "Nagel is, therefore, using the Zurich confidential and proprietary information he unlawfully obtained to benefit himself by exploiting it and unjustifiably using it as leverage to acquire a severance payment to which he is not otherwise entitled" (*id.* ¶ 39), thus breaching the Agreement and violating his fiduciary duties (*Id.* ¶¶ 48, 57).

Accordingly, the Court should grant Nagel's motion to strike the relevant portions of the SDNY Complaint and its exhibit as they contain inadmissible settlement negotiations, which are being used by Zurich to prove liability for breach of contract and fiduciary duty.[4]

---

[4]    Nagel reserves his right to move for sanctions against Zurich for its flagrant violation of FRE 408.  *See, e.g.*, *Foster*, 1989 WL 146277, at *6 ("In addition, at the conclusion of this action, if defendant WNYC wishes to so move, the Court will entertain a motion pursuant to Fed. R. Civ. P. 11 against plaintiff for this violation of Rule 408.").

## IV.    ARGUMENT – MOTION TO DISMISS

### A.    Standard Of Review

FRCP 12(b)(6) permits a defendant to make a motion to dismiss for "failure to state a claim upon which relief can be granted."   Such a motion can only be denied when the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."   *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).   Even if a document is not referenced, if "the complaint 'relies heavily upon its terms and effect,'" that "renders the document 'integral' to the complaint."   *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext*, 62 F.3d at 72).   *See also Fridman v. GCS Computers LLC*, No. 17 Civ. 6698, 2019 WL 1017534, at *4 (S.D.N.Y. Mar. 4, 2019) ("[T]he time records are central and integral to the Amended Complaint and should be considered with the Dismissal Motion.").

### B.    Zurich Fails To State A Claim For Breach Of Contract

As an initial matter, part of Zurich's breach of contract claim rests upon its assertion that Nagel withheld proprietary information from Zurich "attempting to use it as leverage to secure a severance payment to which he is not otherwise entitled."   (SDNY Complaint ¶ 48).   Since all the allegations related to this argument must be struck as inadmissible (*see supra* Point II.B), this portion of Zurich's breach of contract claim automatically fails.   *See Foster*, 1989 WL 146277, at

*6 (granting defendant's motion to strike, refusing to consider the struck documents, and then granting defendant's motion to dismiss).  Accordingly, the Court should automatically grant Nagel's motion to dismiss this portion of Zurich's breach of contract claim.

In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages."  *Second Source Funding, LLC v. Yellowstone Capital, LLC*, 144 A.D.3d 445, 445-46 (1st Dep't 2016) (citations omitted).

Terms of a contracts must be read in context and given their plain, ordinary meanings.  *See United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 453 (S.D.N.Y. 2018).  When interpreting a contract, the "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000).  It is the parties' plainly intended terms that matter, and the scope of those terms may not be expanded by undue assumptions and inferences about the parties' intent.  *See Lockheed Martin Corp. v. Aatlas Com. Inc.*, 283 A.D.2d 801, 804 (2001) (holding information "generated or collected by or used in the operations of [plaintiff]" did not include personnel information about plaintiff's employees).

Per the SDNY Complaint, Zurich claims that Nagel breached the Agreement in three ways: when he (1) "forwarded, downloaded, and/or copied more than 60 documents," (2) failed to "agree to a forensic inspection of his electronic devices," and (3) "refused to return the Zurich confidential and proprietary information." (SDNY Complaint ¶¶ 47, 50).   However, the contract, by its terms, did not bar the alleged emails or require a forensic inspection of his devices, and Zurich does not allege that the refusal to return documents has caused damages or would warrant specific performance.

First, Zurich's allegation that Nagel forwarded 60 emails to his email does not constitute a breach of the Agreement.  The Agreement only prevents Nagel from doing the following with Zurich's proprietary information: "disclose, use for myself or others, make unauthorized copies of, alter or modify in any way, or take with me." (Agreement ¶ I.B).  Additionally, the purpose of this requirement is to "guard and protect Proprietary Information."  (*Id.*).

The contract must be read according to the language the parties actually chose, and, in plain terms, emailing a document to oneself – without further allegations regarding the ***intent behind*** such action – is not disclosing, using, copying, or taking the documents in violation of the Agreement's instruction to "guard and protect Proprietary Information."  The Agreement notably ***does not*** bar Nagel's use of a personal machine to perform his work, nor require that company work be done exclusively on a company or otherwise secured device.  On the contrary, in employment relationships (and, particularly ones during this COVID-era), employers customarily set out specific confidentiality requirements, but still permit employees to perform company work on personal devices.

Second, as to Nagel's alleged refusal to submit to a forensic search of his personal machine, the contract does not provide for such a search, and refusing to submit to one does not constitute breach either.

And finally, with respect to Zurich's breach of contract claim based on the allegation that Nagel "refused to return the Zurich confidential and proprietary information,"[5] Zurich has failed

---

[5]     To the extent Zurich plans to argue in opposition that Nagel did not return his work computer or other physical materials and documents to Zurich, such an assertion would violate FRCP 11, which requires an attorney to only submit filings that currently have or will have evidentiary support.  Nagel returned all Company materials via messenger on November 13, 2020. (Hogan Dec. Ex. 6 ("Receipt")).

to allege any damages from the keeping of information or entitlement to specific performance.[6]  A complaint for breach of contract must plausibly allege facts that a breach caused damage; an allegation of breach by itself is insufficient.  *See Khodeir v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017); *accord Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 11 Civ.- 8440 (PAC), 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 513 F. App'x 109 (2d Cir. 2013) (finding insufficient the allegation that the counterclaim defendant owed "certain sums of money").

Here, Zurich has done no more than allege a breach; its allegations of damages are conclusory.  Zurich says only that "Zurich's goodwill, reputation, and business and competitive advantages have been damaged by Nagel's breaches of the Proprietary Information Agreement." (SDNY Complaint ¶ 51).  It is impossible to surmise from these allegations, however, just how Zurich's goodwill, reputation and business and competitive advantages have plausibly been damaged.  Damage to these sorts of interests definitionally requires publication to the public or competitors, which is not alleged.  *See, e.g., Goodwill*, *Black's Law Dictionary* (11th ed. 2019) ("A business's *reputation, patronage,* and other intangible assets that are considered when appraising the business.") (Emphasis added).

Nor has Zurich pled entitlement to specific performance.  To allege an entitlement to specific performance, a plaintiff must provide "nonconclusory allegations as to why an award of damages would be inadequate."  *Emigrant Bank v. UBS Real Est. Sec., Inc.*, 49 A.D.3d 382, 385 (1st Dep't 2008).  Again, the contract does not require that Nagel submit to a forensic search of his personal computers, and Zurich has provided no non-conclusory allegations as to why damages would be inadequate.

For all these reasons, the Court should dismiss Zurich's breach of contract claim in full.

---

[6]     This same argument applies to Zurich's breach of fiduciary duty claim as well.

### C.     Zurich Fails To State A Claim For Breach Of Fiduciary Duty

As an initial matter, part of Zurich's breach of fiduciary duty claim also rests upon its assertion that Nagel withheld proprietary information from Zurich "in an attempt to force Zurich to pay him severance." (SDNY Complaint ¶ 57). Since all the allegations related to this argument must be struck as inadmissible (*see supra* Point II.B), this portion of Zurich's breach of contract claim automatically fails. *See Foster*, 1989 WL 146277, at *6.

Moreover, the entirety of Zurich's breach of fiduciary duty claim fails because it is wholly duplicative of its breach of contract claim. "'A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.'" *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,* No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *15 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) (quoting *William Kaufman Org., Ltd. v. Graham & James, LLP*, 269 A.D.2d 171, 173 (1st Dep't 2000)) (granting motion to dismiss because the allegations underlying the breach of fiduciary duty claim were the same as those underlying the breach of contract claim).

In the SDNY Complaint, Zurich's breach of fiduciary duty claim arises out of its allegations that Nagel (1) forwarded emails to his personal account, (2) refused to return Zurich's proprietary information, and (3) tried to withhold documents to force payment of severance. (SDNY Complaint ¶ 57). These are identical in sum and substance to those pled in support of Zurich's breach of contract claim (*compare id.* ¶¶ 43-54 *with* ¶¶ 55-60), and there are no additional allegations, outside of these, that Zurich can point to in establishing an independent basis for a breach of fiduciary duty claim.

Accordingly, the Court should grant Nagel's motion to dismiss Zurich's breach of fiduciary duty claim in full due to its duplicative nature.

### D.     Zurich Fails To State A Claim Under The Defend Trade Secrets Act

The Defend Trade Secrets Act ("DTSA") permits the owner of "a trade secret" that is "misappropriated" to bring a civil action.  18 U.S.C. § 1836(b)(1).  Under the DTSA, there are two different kinds of misappropriation (with two remedies).  First, DTSA permits an action for "actual damages" and "unjust enrichment" caused by actual misappropriation.  18 U.S.C. § 1836(B).  Second, a DTSA plaintiff may secure an injunction "to prevent any actual *or threatened* misappropriation."  18 U.S.C. § 1836(3)(A)(i) (emphasis added).  The injunction remedy thus has a broader scope than the award remedy because it addresses threats of misappropriation that have not yet caused actual damages.

Here, Zurich does not plausibly allege a misappropriation (1) of a "trade secret" (2) causing actual damages, or (3) warranting an injunction due to threat.  Accordingly, the Court should grant Nagel's motion to dismiss Zurich's DTSA claim.

### 1.     There Is No Allegation of A "Trade Secret" With Independent Economic Value

The DTSA defines trade secrets as: "all forms and types of financial, business, scientific, technical, economic, or engineering information. . . if (A) the owner thereof has taken reasonable measures to keep such information secret; ***and*** (B) the information derives ***independent economic value***, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. . . ." 18 U.S.C. § 1839(3) (emphasis added).  The statute illustrates this concept with a long list of examples: "patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." *Id.*

Courts regularly dismiss complaints for failing to specifically allege the independent economic value of a trade secret. *See, e.g.*, *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F.

Supp. 3d 410, 448 (S.D.N.Y. 2019) ("The DNC has not identified anything about the process of developing donor lists or fundraising strategies or shown how their particular value derives from their secrecy."); *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17 Civ. 5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) ("Trade secrets are a narrow category of confidential information; to survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value.")

Zurich furnishes its own list of information it claims Nagel misappropriated by acquisition, but it fails to sufficiently allege that the information possesses independent economic value derived from secrecy.  In Paragraph 29 of the SDNY Complaint, for example, Zurich claims that Nagel sent over 60 e-mails to himself "including, but not limited to, corporate governance documents, board resolutions, biographical affidavits containing sensitive personal information for Zurich senior executives, and financial reports."  Notably, however, Zurich does not repeat *any* of the examples given by the statute—not even the statute's vaguer terms like "procedures" or "processes."  Nor does Zurich explain how a "corporate governance document, board resolution" or "biographical affidavit" would have any independent economic value.

Simply put, the types of documents that Nagel emailed to himself are not plausibly the types of properties another business would want for their independent economic value.  Internal governance of a complex, multi-entity firm is highly firm-specific, and no other firm can copy and profit off of a governance plan.  Likewise, board resolutions commonly contain no more than public or quasi-public information about officer appointments.  In any case, Zurich has not specified how such documents would have independent economic value derived from secrecy. Moreover, it does not matter that the biographical affidavits contained "sensitive personal information."  The DTSA defends trade secrets, not "sensitive personal information."  Finally, the

allegation about a "financial report" is too vague to establish any trade-secret value. A company's financial reporting does not possess "independent economic value" to third parties.

Courts routinely dismiss claims with far more specificity as to independent economic value than what is pled in this Complaint. *See, e.g.*, *TRB Acquisitions LLC v. Yedid*, No. 20 Civ. 0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (finding the following allegations "far too general": "core brand and marketing plan strategy," including "plans to create and discontinue licensed product lines, and strategies and plans for competing in certain trade channels, product categories and markets, including which types of consumers to target, which retail and other channels to enter and at which price points, and ultimately which licensees to partner with."); *Kumaran v. Northland Energy Trading, LLC*, No. 119 Civ. 8345 (MKV) (DCF), 2021 WL 797113, at *11 (S.D.N.Y. Feb. 26, 2021) (finding insufficient allegations about "risk management tools, hedging strategies, designs, models, processes, techniques, algorithms, hedging methodologies, graphical interfaces, decision support tools, Timetrics Software and other Confidential Information.").[7]

For the same reasons, Zurich's allegations about the secrets Nagel allegedly threatens to use or disclose, SDNY Complaint ¶ 67, are far too vague to allege independent economic value. True, Nagel knows about Zurich's organization but, as discussed, possession of knowledge does

---

[7]     Successful DTSA complaints allege independent and economic value with *far* more specificity than Zurich's. *See, e.g.*, *Trahan v. Lazar*, 457 F. Supp. 3d 323, 335 (S.D.N.Y. 2020) (financial consultants successfully alleged misappropriation of IP/code related to a proprietary portfolio quantitative analysis); *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (financial planners successfully alleged misappropriation of "(1) non-public sourcing information for over 2,000 clients; (2) business-specific non-disclosure agreements; and (3) certain specifically identified documents, such as 'Brevet's Direct Lending Presentation,' 'Brevet's Valuation Methodology, Principles and Procedures,' 'Brevet's Deal Scoring Template,' and 'Brevet's Underwriting and Closing Guidelines.'"); *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 172 (E.D.N.Y. 2018) (engineering, software and design data related to the design of a complex retractable stadium roof).

not imply a threat of misappropriation, or else every fired executive would be subject to a DTSA lawsuit.  At the very least, Zurich must specify which part of Nagel's knowledge he is alleged to be threatening to use or disclose.  In fact, the complaint makes no attempt of any kind to distinguish Nagel's broad and unavoidable knowledge from a subset of trade secrets within that broad knowledge, let alone explain how Nagel could possibly derive any value from any of it.

Accordingly, the Court must dismiss Zurich's DTSA claim for the sole reason of failure to sufficiently plead "trade secrets."

## 2.    The Complaint Does Not Allege Acquisition Causing Actual Damage

A defendant misappropriates a trade secret either by acquiring it through improper means or using/disclosing it by improper means.  *See* 18 U.S.C. § 1839(5).  "Improper means" includes by "breach or inducement of a breach of a duty to maintain secrecy."  18 U.S.C. § 1839(6)(A).  Here, Zurich does not attempt to plead a viable use or disclosure theory.  It pleads only that Nagel acquired/disclosed documents by emailing them to himself in violation of the Agreement.  Only where a company policy or a binding confidentiality agreement specifically forbids e-mailing a confidential document to a personal e-mail address, or uploading it to a personal cloud account, will such emailing or uploading constitute an "improper means" of acquisition.  *See, e.g.*, *Bramshill Invs., LLC v. Pullen,* No. CV 19-18288, 2020 WL 4581827, at *4 (D.N.J. Aug. 10, 2020) (breach of a specific company policy against emailing documents to a personal account); *AUA Private Equity Partners, LLC v. Soto*, No. 17 Civ. 8035 (GHW), 2018 WL 1684339, at *7 (S.D.N.Y. Apr. 5, 2018) ("Because Ms. Soto is alleged to have uploaded AUA trade secrets . . . *in direct violation* of the confidentiality agreements that she signed, the complaint plausibly alleges that she acquired the trade secrets by improper means" (emphasis added)).  No agreement of that kind, however, governed Nagel's employment and was pleaded in the SDNY Complaint.

15

Moreover, the cause of action for an award under the DTSA compensates actual damages or otherwise remedies a wrongdoer's unjust enrichment.  Thus, a claim for such an award must plausibly allege cognizable actual damages or unjust enrichment.  *See Mtivity, Inc. v. Off. Depot, Inc.*, ---F. Supp. 3d---, No. 19 Civ. 5094 (FB) (RML), 2021 WL 969124, at *9 (E.D.N.Y. Mar. 16, 2021).

Here, Zurich implausibly alleges damage to its goodwill, reputation and legitimate business interest caused by Nagel's emails.  (SDNY Complaint ¶72).  It does not attempt to explain what *actual* damages Nagel has caused to the company's goodwill, reputation or interests – given that no competitor or investor is alleged to have seen any sensitive information.  Nor does Zurich allege that Nagel enriched himself by selling the trade secrets or using them to put himself in business.  The DTSA requires a showing of *actual* damages or unjust enrichment; it does not defend the dignitary interests of a corporation in its information or give private confidentiality agreements the force of federal law.

The Court should dismiss Zurich's DTSA claim for this reason as well.

### 3. The Complaint Does Not Allege Threatened Use Or Disclosure Warranting An Injunction

Finally, the Complaint fails to sufficiently allege threatened disclosure warranting an injunction.  While Zurich describes Nagel's knowledge of its information (*see* SDNY Complaint ¶¶ 66), a threat of misappropriation does not follow from mere knowledge.  *See Cotiviti, Inc. v. Deagle*, No. 20 Civ. 2730 (ER), 2020 WL 6806434, at *11 (S.D.N.Y. Nov. 19, 2020) (holding that an allegation of employment with a competitor did not state a claim for a "threatened" misappropriation.); *Samick Music Corp. v. Gordon*, No. SACV 20-395-GW-JDEX, 2020 WL 3210613, at *9 (C.D. Cal. Mar. 26, 2020) ("Finding that Gordon violated the DTSA . . . would risk

widening liability to any former employee who once had access to an employer's trade secrets and possibly remembered the password to access that information.")

Accordingly, the Court should dismiss Zurich's DTSA claim for this reason as well.

### E.     Zurich Fails to State An Unjust Enrichment Claim

Zurich's unjust enrichment claim is based upon separate allegations other than his breach of contract, breach of fiduciary duty, and DTSA claims.  Specifically, Zurich alleges that Nagel began falsifying his timesheets to receive unearned overtime, beginning in 2013.  (SDNY Complaint ¶¶ 19-25).  Though Zurich alleges that the fraud continued for seven years, the Company claims that it did not notice a problem until October 2020, when it conducted "an internal review of Nagel's self-reported timesheets."  *Id.*

Zurich alleges that "for months and years" Nagel worked from 6:45 a.m. to 9:00 p.m.  and "routinely, and nearly without exception, reported exactly 5.75 hours of overtime worked each day."  (*Id.* at ¶ 21).  Zurich argues that the "sheer consistency" of reported overtime creates "an inference of falsification," corroborated by employee-badge access records."  (*Id.* at ¶ 22).  Zurich also cites as two instances of known falsification (1) an unspecified week during Nagel's 10 years of employment when Nagel clocked time while he was driving to Florida; and (2) unspecified Fridays "during the summer months" that Nagel reported working until 11:00 p.m.  (*Id.* at ¶¶ 22-23).  Without explaining the basis for its calculation, Zurich claims that Nagel unduly received "$750,000 in overtime compensation."  (*Id.* at ¶ 25).

### 1.     Zurich's Unjust Enrichment Claim Is A Fraud Claim In Disguise That Does Not Meet That Claim's Heightened Pleadings Requirements

To avoid the more complicated elements of fraud and its heightened pleading requirements, Zurich has attempted to replace a conventional tort claim of fraud with a catchall claim of unjust enrichment.  This is improper.

"To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Comprehensive Mental Assessment & Med. Care, P.C. v. Gusrae Kaplan Nusbaum, PLLC*, 130 A.D.3d 670, 671 (1st Dep't 2015) (quotations omitted). Here, Zurich pleads that Nagel's receipt of overpayments was "against equity and good conscience" *because* the overpayment was induced by fraud: "In other words, Nagel has been unjustly enriched ***by virtue of his falsifying timesheets*** resulting in his receipt of undue overtime compensation, and such retention of unearned monies violates fundamental principles of justice, equity, and good conscience." (SDNY Complaint ¶ 78 (emphasis added)).

This substitution of unjust enrichment for fraud is improper. As the New York Court of Appeals has explained:

> [U]njust enrichment is ***not a catchall cause of action*** to be used when others fail. It is available ***only*** in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. ***An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.***

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) (citations omitted) (emphasis added).

Accordingly, and applying *Corsello*, courts regularly dismiss unjust enrichment claims that duplicate a claim for fraud. *See, e.g.*, *Abbott Lab'ys v. Adelphia Supply USA*, No. 15 Civ. 5826 (CBA) (LB), 2017 WL 57802, at *11 (E.D.N.Y. Jan. 4, 2017) (on a motion to dismiss, dismissing an unjust enrichment claim where fraud was pled); *Paulino v. Conopco, Inc.*, No. 14 Civ. 5145 (JG) (RML), 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) (same; collecting cases); *Tyman v. Pfizer, Inc.*, No. 16 Civ. 06941 (LTS) (BCM), 2017 WL 6988936, at *20 (S.D.N.Y. Dec. 27,

2017), *R&R adopted*, No. 16 Civ. 6941 (LTS) (BCM), 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018) (same).

It does not matter that Zurich chose to claim unjust enrichment without *also* claiming fraud. "[I]f a claimant seeks restitution of profits from conduct that may or may not be tortious, it is the tort law of the jurisdiction that formally decides the question of unjust enrichment, rather than the other way around." Restatement (Third) of Restitution and Unjust Enrichment § 3 (2011). Fraud is a source of unjust enrichment, not vice versa. *Id.* The rule of *Corsello* would be gutted if a plaintiff could, by their own choice of pleadings, exclude fraud and plead only unjust enrichment.

And, even if Zurich did plead fraud, the claim would still fail. First, by eschewing the fraud element of justifiable reliance, Zurich avoids explaining how it could justifiably rely on records which, apparently at the first and slightest scrutiny, it determined to be false, but which it failed to scrutinize in any way during more than seven alleged years of ongoing fraud.

Second, by choosing to plead Nagel's alleged timecard fraud as unjust enrichment, Zurich avoids application of FRCP 9(b). Rule 9(b) would have required that Zurich plead fraud with specificity as to "the time, place, speaker, and content of the alleged misrepresentations." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001). "[T]he point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 87 (2d Cir. 2017) (quoting *U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015)). Here, Zurich has failed to plead fraud with specificity. For example, since Zurich did not admit that ***all*** of Nagel's timesheets were falsified, it must, under 9(b), put Nagel on notice of which timesheets, during which periods, were

fraudulent, so as allow him to prepare a response.  The Complaint, in its current form, fails to do so.

Accordingly, the Court should dismiss Zurich's unjust enrichment claim in full.

### 2. The Voluntary Payment Doctrine Bars Zurich's Recovery for Unjust Enrichment

The "voluntary payment doctrine" in New York bars recovery of payments "voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003) (affirming dismissal of complaint).

Zurich, through management, consented to pay Nagel the amount specified by signing his timesheets. (*See* Hogan Dec. Ex. 7 ("Example Timesheets")).[8]  Since Zurich has not sufficiently pled fraud or mistake of fact, the Court must dismiss Zurich's unjust enrichment claim on this basis as well.

## V. CONCLUSION

For the reasons set forth herein, Nagel respectfully requests that the Court grant his motion to strike portions of Zurich's Complaint, dismiss the Complaint in its entirety, and award any other relief that the Court deems just and proper.

---

[8]     These timesheets are admissible because timesheets are referenced in the Complaint. (SDNY Complaint ¶¶ 20-21).

Dated: March 24, 2021
     New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____

Christine L. Hogan
John S. Crain

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
chogan@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Defendant*

21