**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
ZURICH AMERICAN LIFE INSURANCE     :
COMPANY,                                  :     Civil Case No.: 1:20-cv-11091
                                      :     (JSR)
                     Plaintiff,     :
           v.                       :
                                       :
JON NAGEL,                             :
                                     :
                     Defendant.   :
-------------------------------------------------------------- X

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO STRIKE AND MOTION TO DISMISS

**WIGDOR LLP**

Christine L. Hogan
John S. Crain

85 Fifth Avenue
New York, NY  10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
chogan@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

I.      Argument – Motion to Strike ............................................................................1

II.     Argument – Motion to Dismiss..........................................................................1

        A.      Plaintiff Cannot Overcome Applicable Precedent Requiring That
                Duplicative Claims be Dismissed ...........................................................3

                1.      Breach of Fiduciary Claim.............................................................3

                2.      Unjust Enrichment Claim ..............................................................4

        B.      Plaintiff Fails to Adequately Address Mr. Nagel's Arguments That Its
                Breach of Contract Claim Must be Dismissed for Failure to Adequately
                Plead Breach and Damages......................................................................6

        C.      Plaintiff Fails to Adequately Address Mr. Nagel's Arguments That Its
                DTSA Claim Must be Dismissed for Failure to Adequately Plead
                Misappropriation of A "Trade Secret" That Led to Damages ................8

CONCLUSION....................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aamco Transmissions, Inc. v. Trovato*,
    No. 11 Civ. 1386 (WQH) (POR), 2011 WL 4549135 (S.D. Cal. Sept. 28, 2011) .................... 2

*Am. Fed. Grp., Ltd. v. Rothenberg*,
    136 F.3d 897 (2d Cir. 1998) ........................................................................................... 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 3

*AUA Priv. Equity Partners, LLC v. Soto*,
    No. 17 Civ. 8035 (GHW), 2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018) ................................... 9

*Bramshill Invs., LLC v. Pullen*,
    No. 19 Civ. 18288, 2020 WL 4581827 (D.N.J. Aug. 10, 2020) ................................................ 9

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777 (2012) .................................................................................................... 4

*Elsevier Inc. v. Dr. Evidence, LLC*,
    No. 17 Civ. 5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ................................... 10

*Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of New York*,
    375 F.3d 168 (2d Cir. 2004) ........................................................................................... 2

*ExpertConnect, L.L.C. v. Fowler*,
    No. 18 Civ. 4828 (LGS), 2019 WL 3004161 (S.D.N.Y. July 10, 2019) ................................... 10

*Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
    808 F. Supp. 2d 552 (S.D.N.Y. 2011) ............................................................................... 8

*In re MTBE Prod. Liab. Litig.*,
    379 F. Supp. 2d 348 (S.D.N.Y. 2005) ............................................................................... 7

*Kirby McInerney & Squire, LLP v. Hall Charne Bruce & Olson, S.C.*,
    790 N.Y.S.2d 84 (1st Dep't 2005) .................................................................................... 6

*Kraus USA, Inc. v. Magarik*,
    No. 17 Civ. 6541 (ER), 2020 WL 2415670 (S.D.N.Y. May 12, 2020) ................................... 10

*Lazzaro v. Manber*,
    701 F. Supp. 353 (E.D.N.Y. 1988) ................................................................................... 6

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ................................................................... 2

*Medidata Sols., Inc., v. Veeva Sys. Inc.*,
    No. 17 Civ. 589 (LGS), 2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018) ................................ 10

*Paulino v. Conopco, Inc.*,
    No. 14-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ................................................ 4

*Prout v. Vladeck*,
    326 F.R.D. 407 (S.D.N.Y. 2018) ............................................................... 2

*Samsung Display Co. v. Acacia Rsch. Corp.*,
    No. 14 Civ. 1353 (JPO), 2014 WL 6791603 (S.D.N.Y. Dec. 3, 2014) ...................................... 8

*Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*,
    No. 06 Civ. 139, 2007 WL 2986469 (W.D. Mich. Oct. 10, 2007) ............................................ 2

*Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*,
    111 F.3d 1284 (6th Cir. 1997) ............................................................... 2

*Universal Acupuncture Pain Services v. State Farm*,
    196 F. Supp. 2d 378 (S.D.N.Y. 2002) ............................................................ 4, 5

## Other Authorities

Federal Rule of Civil Procedure 8 ................................................................. 3

FRCP 9(b) ............................................................................................ 5

FRCP 12(b)(6) ........................................................................................ 1

Federal Rule of Civil Procedure 12(f) .............................................................. 1

Federal Rule of Evidence 408 ...................................................................... 1, 2

Defendant Jon Nagel respectfully submits this reply memorandum of law in further support of his (1) motion to strike portions of the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(f), and (2) motion to dismiss all causes of action in the Complaint pursuant to FRCP 12(b)(6).

## I.   <u>ARGUMENT – MOTION TO STRIKE</u>

As stated in Mr. Nagel's moving brief, Plaintiff's breach of contract and fiduciary duty claims explicitly rely on an email sent by Mr. Nagel's prior counsel, Thomas Budd – the sole purpose of which was to initiate settlement discussions.  (D. Br. at 5-6).  Because the email chain is inadmissible per Federal Rule of Evidence ("FRE") 408, the email chain itself and all references to it in the Complaint should be struck.

In order to attempt to avoid application of FRE 408, Plaintiff argues that Mr. Nagel's attempts to negotiate a settlement amounted to extortion.  (Pl. Br. at 6-7).  This reading of the email chain, however, is simply implausible. Employees, like employers, are entitled to strike a hard bargain, in settlement or otherwise.  Here, Plaintiff demanded invasive forensic searches of Mr. Nagel's personal devices – a right that it simply does not have under the vaguely worded Agreement – and threatened litigation.  In response, Mr. Nagel, through Mr. Budd, inquired after settlement since he had his own claims against Plaintiff and a global settlement was viable.

By Plaintiff's own pleadings, Mr. Nagel never threatened to breach his duties of confidentiality, to share secrets, or otherwise to harm Plaintiff's interests.  And Plaintiff's bare assertion that Mr. Nagel's offer was "unilateral and unjustified" does not make it extortionate. (It was also, by definition, not unilateral, in that it responded to an initial threat of litigation).  Simply put, nothing in the Budd Settlement Email Chain even comes close to extortion.

Plaintiff's cases on this point are distinguishable because they involve either situations where a court denied a motion to strike under FRE 408 because a party (1) threatened clearly tortious conduct against the other, or (2) put the substance of the settlement agreement itself at issue.  *See e.g., Prout v. Vladeck*, 326 F.R.D. 407, 411 (S.D.N.Y. 2018) (declining to strike "baseless threats of litigation" that were intended to defame); *Aamco Transmissions, Inc. v. Trovato*, No. 11 Civ. 1386 (WQH) (POR), 2011 WL 4549135, at *5 (S.D. Cal. Sept. 28, 2011) (fraud); *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1294 (6th Cir. 1997) (threats of retaliation in violation of the NLRA); *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, No. 06 Civ. 139, 2007 WL 2986469, at *3 (W.D. Mich. Oct. 10, 2007) ("such evidence merely goes to the terms of the agreement and is not offered to prove or disprove liability or damages").  Neither circumstance applies here.

It is true that evidentiary questions "'in general require the context of an ongoing and unfolding trial in which to be properly decided.'"  (Pl. Br. at 5 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  Even the Second Circuit in *Lipsky*, however, affirmed the district's granting of a motion to strike under FRE 408.  Likewise, here, Mr. Budd's emails are not admissible, and, accordingly, the Court should follow *Lipsky* and strike them too.

## II.   ARGUMENT – MOTION TO DISMISS

From the very outset of its brief, Plaintiff makes the misguided argument that a complaint "is judged by 'the liberal system of notice pleading set up by the Federal rules.'"  (Pl. Br. at 8 (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of New York*, 375 F.3d 168, 176-77 (2d Cir. 2004)).  Of course, the notice pleading standard was overturned by *Ashcroft v. Iqbal*, in which the Supreme Court held that a complaint must "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  556 U.S. 662, 678 (2009) (quotations and citations omitted).  (*See also* D. Br. at 7).

Plaintiff's failure to appreciate the fundaments of pleading compromises many of its arguments.  For instance, it erroneously cites FRCP 8 and pre-*Iqbal* case-law in its arguments regarding breach of contract (Pl. Br. at 11, 12), damages under the federal Defend Trade Secret Act ("DTSA") (*id*. at 19), and its claim of unjust enrichment (*id*. at 21).  When applying the correct pleading standard, the correct outcome is apparent – the Court should grant Mr. Nagel's motion to dismiss in full, with prejudice.

### A.    Plaintiff Cannot Overcome Applicable Precedent Requiring That Duplicative Claims be Dismissed

As demonstrated in Mr. Nagel's moving brief, breach of fiduciary duty and unjust enrichment claims must be dismissed if they are duplicative of other claims.  (D. Br. at 11, 17-20).  Since Plaintiff fails to plausibly argue that they are not duplicative – and even acknowledges this rule of law (Pl. Br. at 20, 22) – both claims must be dismissed.

### 1.    Breach of Fiduciary Duty Claim

Plaintiff tries to recast its breach of fiduciary duty claim as one that is not duplicative, despite defining it as a duty "not to exploit the former employer's confidential information" (Pl. Br. at 20) (quoting *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 914 (2d Cir. 1998)) – a requirement explicitly covered by the Agreement itself.  Then, Plaintiff references Mr. Nagel's "extra-contractual misconduct, as set forth in detail in the Complaint" (Pl. Br. at 21) as establishing an actionable breach, but does not actually identify this "extra-contractual misconduct."[1]

---

[1]    To the extent Plaintiff is referencing Mr. Budd's statements in the email chain, these are inadmissible. *See supra* Point II.  Moreover, to the extent Plaintiff is arguing that the fiduciary duty arises from Mr. Nagel's employment and not from the Agreement itself, such an argument fails because Plaintiff never alleges what his fiduciary duties were as a paralegal or how he

Overall, Plaintiff has failed to allege a non-duplicative breach of duty, and its referenced cases (Pl. Br. at 21) only support the strawman proposition that such a duty may, dependent upon the facts alleged, be independent of a contract.  That is beside the point, where, as here, Plaintiff has – by its own choice – pled that the Agreement with Mr. Nagel covers the exact duties it identifies in its breach of fiduciary duty claim.  The Court should dismiss this claim.

### 2.   Unjust Enrichment Claim

For this claim, Plaintiff first argues that "Nagel has not established that Zurich's unjust enrichment claim differs from the 'situations' in which the underlying facts do not fit squarely within the ambit of contract or tort, but a vehicle for recovery is nonetheless necessary."  (Pl. Br. at 22).  This strained argument not only improperly attempts to shift the burden to Mr. Nagel to plead Plaintiff's case, but also ignores that its unjust enrichment claim, on its face, fits squarely within the tort of fraud.[2]

Second, Plaintiff attempts to both distinguish the NY Court of Appeal's decision in *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012), and replace it with *Universal Acupuncture Pain Services v. State Farm*, 196 F. Supp. 2d 378 (S.D.N.Y. 2002), as the operative precedent.  Both attempts fail.  Contrary to Plaintiff's assertion, there is no list of torts to which *Corsello* only applies, excluding others (like fraud).  (Pl. Br. at 22) (citing *Paulino v. Conopco, Inc.* No. 14-5145, 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015)).  *Corsello* speaks of tort and contract claims generally.  And, as argued in Mr. Nagel's moving brief, if Plaintiff could

---

breached those duties by sending himself emails or declining to submit to an invasive forensic search.

[2]   Using worktime to work on personal business would also come under the tort of fraud, since it is essentially claiming payment for time not otherwise worked (*i.e.*, falsifying timesheets).

sidestep the *Corsello* rule by choosing to plead unjust enrichment instead of fraud, *Corsello* would essentially be overturned by a backdoor.  (D. Br. at 19).

Plaintiff's extensive reliance on *Universal Acupuncture Pain Services v. State Farm*, 196 F. Supp. 2d 378 (S.D.N.Y. 2002), which permitted a claim for unjust enrichment to stand alongside a fraud claim, is also misguided.  The case predates the holding of *Corsello* by a decade, and under *Corsello*'s rule of law, the unjust enrichment claim in *Universal* would have been dismissed.[3] *Corsello* governs and requires dismissal of Plaintiff's unjust enrichment claim.

Third, even if it had been brought as a fraud claim, Plaintiff's unjust enrichment claim has not satisfied all the elements or the particularity requirement of FRCP 9(b).  With respect to the justifiable reliance element, for example, Plaintiff does not address how it could have justifiably relied on time records that it alleges were fraudulent on their face, but for which Mr. Nagel's supervisors approved every week for seven plus years.

Moreover, in its arguments for particularity, Plaintiff disingenuously rewrites its pleadings, implicitly acknowledging that its Complaint was inadequate to begin with.  Plaintiff now attempts to claim that Mr. Nagel falsified timesheets "from approximately 2013 until his termination of his employment in November 2020" by "report[ing] exactly 5.75 hours of overtime worked each day." (Pl. Br. at 3).  This is in direct contrast to the sworn statements made in the Complaint, where Plaintiff claims that Mr. Nagel only "routinely" reported 5.75 hours of overtime.  (SDNY Complaint ¶ 21).  The Complaint also mentions as examples "a non-work trip" and "summer months" (*id*. at ¶¶ 23–24) but does not detail when the alleged fraud occurred and for how many hours.

---

[3]    Moreover, it seems unlikely – given that the Court did not address it – that the movant even argued that the claim was duplicative and should be dismissed (thereby waiving the argument).

To bolster its arguments, Plaintiff cites only an archetypal securities fraud case where the Plaintiff pled fraud crisply, succinctly and with particularity, in marked contrast to the present pleadings. *Lazzaro v. Manber*, 701 F. Supp. 353, 359 (E.D.N.Y. 1988) ("In December 1982, Purcell . . . solicited Riegel to purchase Flo–Con shares, falsely representing that: (1) Flo–Con had developed a new heat-recycling technology; (2) Flo–Con had numerous contracts to sell its technology; and (3) the price for a Flo–Con share would rise to $10. Relying on these representations, Riegel purchased a total of 20,000 shares for an average price of $1.75 per share.").

As a final matter, Plaintiff does not adequately explain why the voluntary payment doctrine does nor bar its unjust enrichment claim. In discussing the holding of *Kirby McInerney & Squire, LLP v. Hall Charne Bruce & Olson, S.C.*, Plaintiff focuses the Court's attention to the phrase "full knowledge of the facts." 790 N.Y.S. 2d 84, 85 (1st Dep't 2005). But Mr. Nagel's supervisor – a representative of Plaintiff – <u>did</u> have full knowledge of the facts when he approved Mr. Nagel's timesheets week after week because he saw the start and end times and total hours worked per week. As a supervisor, his knowledge must be imputed to the Plaintiff. Therefore, the voluntary payment doctrine fully applies.

For all the reasons stated above, Plaintiff's unjust enrichment claim must be dismissed.

**B.     Plaintiff Fails to Adequately Address Mr. Nagel's Arguments That Its Breach of Contract Claim Must be Dismissed For Failure to Adequately Plead Breach and Damages**

As an initial matter, Plaintiff claims that Mr. Nagel breached the Agreement by "refus[ing] to submit his electronic devices for forensic inspection." (Pl. Br. at 4). This is an absurd reading of the Agreement, which does not require any such forensic inspection. While it does require "electronic medi[a]" to be returned, there is no allegation that Mr. Nagel did not return what would

fall into such a definition – such as CD-ROMs, flash drives, and the like.

Next, Plaintiff focuses on its allegation that Mr. Nagel violated the Agreement by forwarding Company emails "without authorization" to his personal account.  (Pl. Br. at 10).  Nowhere does the Agreement discuss rules for authorized use, nor does it ever by its plain terms bar the use of, or require pre-authorization before using, a private machine or sending emails to an employee's own personal email account.

Moreover, Plaintiff argues that it is "not required to plead intent under Rule 8" related to this alleged breach.  (Pl. Br. at 11) (quoting *In re MTBE Prod. Liab. Litig.*, 379 F. Supp. 2d 348, 411-12 (S.D.N.Y. 2005)).  In doing so, however, Plaintiff ignores the proper standards for pleading breach of contract and, at the same time, misreads Mr. Nagel's moving brief, which argues not that Plaintiff failed to plead intent, but that the parties' intent is a consideration of overriding importance when construing a contract's terms.  The parties stated their intent when they signed the Agreement, to "guard and protect Proprietary Information."  Mr. Nagel never failed in this duty, and his mere sending of emails to his personal account therefore cannot be construed as an improper "taking" under the contract's terms.

As yet another instance of this failure to understand plausibility pleading, Plaintiff contends that it adequately pled damages in its breach of contract claim.  (Pl. Br. at 9-13).  However, Plaintiff's damages-related allegations are of the implausible, boilerplate and conclusory style so roundly rejected by *Iqbal*.  Under notice pleading, a statement of damage to "goodwill and reputation" might suffice.  However, and as already set forth Mr. Nagel's moving brief, Plaintiff has pled no such facts.  It pleads only that Mr. Nagel sent documents to a personal email account.  It does not plead that he has shared the documents or profited from them.  Simply put, the Complaint contains no shred of information about loss of reputation or goodwill, apart from the

words themselves.  There is no way to infer any kind of damage on these facts (or even to explain how Plaintiff's reputation or goodwill was plausibly damaged).  There is also no way to order Plaintiff to <u>reverse</u> the emailing of the documents, so specific performance is not even possible.

Plaintiff's cases, far from supporting its arguments, perfectly demonstrate the sorts of allegations that give rise to an inference of damages, in contrast to Plaintiff's conclusory allegations here.  *See Samsung Display Co. v. Acacia Rsch. Corp.,* No. 14 Civ. 1353 (JPO), 2014 WL 6791603, at *2 (S.D.N.Y. Dec. 3, 2014) (defendant sued customers of the plaintiff in violation of an agreement not to sue those customers, causing customers to complain and express concern to plaintiff); *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 560 (S.D.N.Y. 2011) (defendant/counterclaim-plaintiffs, whose entire business depended upon the right to use the Hard Rock brand "claim[ed] that [plaintiff] personnel made statements to industry trade publications, and to their potential business partners, that the Hard Rock Defendants lack authority over the Hard Rock Marks").

Accordingly, the Court should dismiss Plaintiff's breach of contract claims as well.

**C.**     **Plaintiff Fails to Adequately Address Mr. Nagel's Arguments That Its DTSA Claim Must Be Dismissed for Failure to Adequately Plead Misappropriation of A "Trade Secret" That Led to Damages**

As an initial matter, the same arguments set forth in response to Plaintiff's breach of contract claim (*see supra* Point II.B) apply here.

Mr. Nagel's actions do not rise to the level of actual or threatened misappropriation because all he did was email documents – of which he already had knowledge of – to himself.  This is not even a "taking" under the Agreement, much less a misappropriation, since the Agreement did not specifically prevent or require pre-authorization before sending emails to an employee's own personal email account.  Despite Plaintiff's arguments to the contrary (Pl. Br. at 18), this is

8

precisely why the *Bramshill* and *Soto* cases are inapposite.  *See Bramshill Invs., LLC v. Pullen*, No. 19 Civ. 18288, 2020 WL 4581827, at *4 (D.N.J. Aug. 10, 2020) (alleging specific "policies and protocols" barring the use of personal email and attaching as an exhibit to the complaint an email sent to the Plaintiff explicitly informing her that company protocol barred use of personal email); *AUA Priv. Equity Partners, LLC v. Soto*, No. 17 Civ. 8035 (GHW), 2018 WL 1684339, at *2 (S.D.N.Y. Apr. 5, 2018) ("The Policies and Procedures also forbid employees . . . from 'download[ing] or transfer[ring] work product or sensitive business content to [the employee's] device.").  There is also no threatened misappropriation because there is no evidence that Mr. Nagel did anything besides forward those emails to himself.

In addition, Plaintiff does not plausibly plead damages under the DTSA.  As explained in Point II.B, Plaintiff's allegations of loss of reputation and/or goodwill and requests for specific performance are simply inadequate.[4]

Finally, Plaintiff does not sufficiently plead a "trade secret" as it is defined by the law. First, Plaintiff attempts to rewrite the standard for pleading the independent economic value of a trade secret under DTSA.  Specifically, Plaintiff ludicrously suggest that the definition of a trade secret is "ordinarily a question of fact" (Pl. Br. at 15), ignoring a mountain of case law dismissing DTSA claims at the pleadings stage.  (D. Br. at 12-13).

Second, Plaintiff again disingenuously attempts to add new facts to its Complaint, by stating that it alleges that Mr. Nagel misappropriated information about its "business and financial practices."  (Pl. Br. at 15).  Even though such an allegation still would <u>not</u> have sufficed, and though the Complaint teems with similar red herring mentions of other trade secrets, Plaintiff has

---

[4]     Plaintiff has not alleged any plausible reason or circumstances suggesting Mr. Nagel will share or use any documents to its detriment.  If Mr. Nagel is a threat because of his knowledge, so is every fired employee.

only ever alleged that <u>Mr. Nagel misappropriated</u> "corporate governance documents, board resolutions, biographical affidavits . . . and financial reports." (SDNY Complaint ¶ 29).  These are simply not trade secrets.

Finally, Plaintiff attempts to rewrite the law by arguing that it is sufficient to identify "discrete categories of documents or information" (Pl. Br. at 15), and hand-waves that their documents have independent value because Zurich is "in the highly competitive insurance industry." (*Id.* at 16).  None of these vague assertions, however, overcome the failure to name a trade secret, and Plaintiff throughout fails to acknowledge that "trade secrets are a narrow category of confidential information." *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17 Civ. 5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018).  Plaintiff's case law exclusively discusses complaints that pled detailed facts about this "highly narrow category," in sharp contrast to its own vague pleadings. *Kraus USA, Inc. v. Magarik*, No. 17 Civ. 6541 (ER), 2020 WL 2415670, at *5 (S.D.N.Y. May 12, 2020) (plaintiff alleged "technical product specifications, information on upcoming designs, sales data, e-commerce data, and other commercially sensitive information"); *ExpertConnect, L.L.C. v. Fowler,* No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *1 (S.D.N.Y. July 10, 2019) (a firm that recruits and trains subject-matter experts to brief corporate managers and investors alleged as trade secrets its list of "subject matter experts, pricing and pricing methodologies, sales data, expert quantifiers and preferences, [and] marketing materials"); *Medidata Sols., Inc., v. Veeva Sys. Inc.*, No. 17 Civ. 589 (LGS), 2018 WL 6173349, at *1 (S.D.N.Y. Nov. 26, 2018) (a software provider alleged as trade secrets its "design model . . . product design principles . . . software architecture and design . . . customer profiles . . . historical pricing data . . . strategies concerning marketing . . . [and] emerging growth areas" amongst numerous others).

**V.      CONCLUSION**

For the reasons set forth herein, Nagel respectfully requests that the Court grant his motion to strike portions of Zurich's Complaint, dismiss the Complaint in its entirety, and award any other relief that the Court deems just and proper.

Dated: April 21, 2021
      New York, New York                    Respectfully submitted,

                                        **WIGDOR LLP**

                                        By: _____
                                              Christine L. Hogan
                                              John S. Crain

                                        85 Fifth Avenue
                                        New York, NY 10003
                                        Telephone: (212) 257-6800
                                        Facsimile: (212) 257-6845
                                        chogan@wigdorlaw.com
                                        jcrain@wigdorlaw.com

                                        *Counsel for Defendant*