UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ZURICH AMERICAN LIFE INSURANCE CO.,

    Plaintiff,

    -v-

JON NAGEL,

    Defendant.
------------------------------------x

20-cv-11091 (JSR)

OPINION

JED S. RAKOFF, U.S.D.J.

    Plaintiff Zurich American Life Insurance Co. ("Zurich") hired defendant Jon Nagel as a senior paralegal in 2011 and fired him in 2020, accusing him of falsifying timesheets and other misconduct. Nagel filed an age discrimination lawsuit in New York state court in December 2020. Soon thereafter, Zurich filed this suit, claiming breach of contract, breach of fiduciary duties, misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), and unjust enrichment. Compl., ECF No. 1.

    Zurich alleges that Nagel forwarded confidential company materials to his personal email account from March 2020 until shortly before his termination. Furthermore, Zurich contends that after Nagel was terminated, he took these electronic materials with him, in that he refused to permit inspection of his personal electronic devices or to certify that he no longer has possession of Zurich's confidential information. Separately, Zurich alleges

1

that by falsifying time sheets and receiving overtime compensation to which he was not entitled, Nagel was unjustly enriched.

Now before the Court is Nagel's motion to strike certain allegations and to dismiss the Complaint, ECF No. 14. By bottom-line order dated May 7, 2021, the Court denied Nagel's motion to strike and granted in part and denied in part his motion to dismiss. ECF No. 20. This opinion sets forth the reasons for that order.

## LEGAL STANDARD

As to the motion to strike, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Usually the questions of admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). Therefore, "[i]n deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Id. "[M]otions to strike are viewed with disfavor and infrequently granted." Emilio v. Sprint Spectrum L.P., 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (quoting In re Merrill Lynch & Co., Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y.2003); accord

Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) ("rarely successful").

As to the motion to dismiss, under Rule 12(b)(6), the Court should dismiss a complaint that "fails to state a claim upon which relief can be granted." The Court must assess whether the Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). On a motion to dismiss, the Court must generally consider only the allegations of the complaint, but "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (internal quotation marks omitted). The Court may also consider a document that is "'integral' to the complaint" because "the complaint 'relies heavily upon its terms and effect.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext, 62 F.3d at 72).

**ANALYSIS**

I. <u>**Motion to Strike**</u>

Nagel moves to strike Exhibit C to the Complaint, an email chain between his attorney at the time and an attorney for Zurich, and he also moves to strike all allegations in the Complaint that

quote from or reference Exhibit C. Nagel argues that the email chain is a settlement communication that is inadmissible under Federal Rule of Evidence 408 and, therefore, that related allegations are all "immaterial" for purposes of Federal Rule of Civil Procedure 12(f) because no admissible evidence could be introduced to demonstrate the truth of those allegations.

Federal Rule of Evidence 408 precludes admission of evidence (for certain purposes) regarding "furnishing, promising, or offering -- or accepting, promising to accept, or offering to accept -- a valuable consideration in compromising or attempting to compromise the claim; and conduct or a statement made during compromise negotiations about the claim." Fed. R. Evid. 408 (numbering omitted).

Exhibit C to the Complaint is an email chain between Thomas Budd, attorney for Nagel, and Noah Finkel, attorney for Zurich. On November 11, 2020, Budd emailed Finkel, noting that a friend had asked Budd to investigate Zurich's termination of Nagel and its threat to file a suit against him. Budd wrote:

> Before starting a lawsuit I believe it may be in everyone's interest to evaluate the possibility of settlement. A suit to recover the computer would likely involve a defense disclosing material on the computer which Mr. Nagel would need to copy since it arguably involves questionable activities by Zurich which Mr. Nagel brought to the Company's attention.
>
> Mr. Nagel is perfectly willing to enter into a reasonable settlement involving a reasonable severance pay, clearing his record with respect to his termination,

4

> protection of Pension rights etc. In exchange he would return the Company Computer and provide assurances that there is no Company material on his personal Computer.
>
> I have not delved further into the terms of a satisfactory settlement until you have checked with your client as to whether settlement is even in the cards. Thank you.

Compl. Ex. C., ECF No. 1-3. Finkel responded by asking if Budd represented Nagel, and Budd replied that he represented Nagel for purposes of settlement but would not represent him in litigation. Id. Nagel argues that Budd's statements were offers to compromise their respective claims and are, accordingly, inadmissible.

Zurich responds that Budd's statements are admissible because they demonstrate "attempted extortion of Zurich," in that Nagel implied that he would only return Zurich's computer and provide assurances that he no longer possessed confidential Zurich information as part of a settlement. Pl. Opp. to Mot. to Strike and Dismiss, ECF No. 17 ("Opp."), at 6 (quoting Compl. Ex. C).

Case law supports Zurich's point; the settlement zone is not a black hole from which no evidence can escape. Courts have held that

> Rule 408 is . . . inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like. . . . Rule 408 does not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations.

Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B., 111 F.3d 1284, 1293 (6th Cir. 1997) (internal quotation marks, citation, and emphasis omitted). The facts of Uforma illustrate the point. A union was pursuing a grievance before the National Labor Relations Board ("NLRB"). During negotiations regarding that grievance, representatives for the company indicated that if the union pursued its grievance, the company would terminate a shift's-worth of workers. The NLRB alleged that this was unlawful retaliation. The Sixth Circuit permitted introduction of evidence regarding what had occurred during the compromise negotiations, reasoning that "the General Counsel [of the NLRB] did not need to prove that the grievance was in fact a meritorious one in order to succeed on its unfair labor practices claims." Id. at 1294. Rather, the NLRB "sought to introduce the evidence in order to demonstrate that, regardless of the legitimacy of the grievance, petitioner threatened, and subsequently retaliated against, the union for pursuing it." Id.

Similar logic applies here. Rule 408 undoubtedly prevents a factfinder from considering Budd's email to prove or disprove alleged misconduct that had already occurred, such as whether Nagel falsified timesheets or emailed documents to himself. However, Zurich also alleges that the email itself breached Nagel's contractual and fiduciary duties to his former employer because in that email, through counsel as his agent, Nagel implied that absent

6

economic consideration, he would not turn over things to which Zurich claims it was indisputably entitled -- *i.e.*, the "Company Computer" and "assurances that there is no Company material on his personal computer." Rule 408 does not preclude Zurich's use of the Budd email to prove a cause of action arising from the email itself.

To be clear, motions in limine are far away. If this case proceeds to trial, the Court would likely limit the use of Exhibit C, and the Court conceivably might exclude it entirely. However, on this record, without "the context of an ongoing and unfolding trial," see Lipsky, 551 F.2d at 893, the Court cannot conclude that the exhibit would be inadmissible for all purposes. Accordingly, Nagel's motion to strike is denied.

## II. Motion to Dismiss

### A. Breach of Contract

When Zurich hired Nagel as a senior paralegal, Nagel signed a contract in which he agreed that he would not "disclose, use for [him]self or others, make unauthorized copies of, alter or modify in anyway [sic], or take with [him]" Zurich's proprietary information. See Agreement Relating to Proprietary Information / Equipment / Work Development, Compl. Ex. A, ECF No. 1-1, at 2. He also agreed, "I shall immediately return all Proprietary Information to the Company upon the Company's request or upon termination of my employment." Id.

Zurich alleges that Nagel breached this agreement in three ways: (1) he "forwarded, downloaded, and/or copied more than 60 documents"; (2) he did not "agree to a forensic inspection of his electronic devices" after his termination; and, (3) through Budd's email, he "refused to return the Zurich confidential and proprietary information." Compl. ¶¶ 47, 50.

Nagel argues that the first two of these allegations do not constitute breaches of contract because the contract does not explicitly forbid a current employee from sending proprietary information to his personal email account, nor does it explicitly require a terminated employee to submit to a forensic inspection of his personal devices. The Court agrees. Although these allegations are relevant to understanding this cause of action, they do not independently state a claim for breach of contract.

The third allegation is different. Nagel does not seriously dispute that his retention of proprietary information after termination, if true, violated the contract. And rightfully so: if Nagel "t[ook] with [him]" company information and failed to "immediately return all Proprietary Information . . . upon [his] termination," then he breached the contract.

Nagel nevertheless argues that the claim should be dismissed because even if he failed to return Zurich's confidential information, Zurich does not plausibly allege damages or entitlement to specific performance. Nagel is mistaken. Zurich

8

alleges that the information Nagel sent to his personal email account, and refused to return, is "highly sensitive" and includes "corporate governance documents, board resolutions, biographical affidavits containing sensitive personal information for Zurich senior executives, and financial reports." Compl. ¶ 29. Zurich further alleges that

> if Nagel discloses this information -- whether intentionally or inadvertently -- to a Zurich competitor, the competitor could use the information to unfairly compete with Zurich, divert its customers, and undercut its business. A third-party disclosure -- even an inadvertent disclosure -- while in the hands of Nagel could also result in the disclosure of personal and highly sensitive information of Zurich employees, compromising Zurich's business reputation and the trust it has cultivated with its personnel.

Id. ¶¶ 41-42. These plausible allegations are enough to support a claim for relief at the motion to dismiss stage. See, e.g., Samsung Display Co. v. Acacia Research Corp., No. 14-1353, 2014 WL 6791603, at *3 (S.D.N.Y. Dec. 3, 2014) ("[Plaintiff] has identified specific injury in the form of damage to its goodwill and reputation -- and that is satisfactory on a motion to dismiss.").

For these reasons, the Court denies Nagel's motion to dismiss with respect to the breach of contract claim.

### B. Breach of Fiduciary Duties

Nagel moves to dismiss the breach of fiduciary duties claim as duplicative of the breach of contract claim. Under New York

law, to allege breach of fiduciary duty, a tort, plaintiff must allege

> a duty . . . apart from and independent of promises made and therefore apart from the manifested intention of the parties to a contract. Thus, a defendant may be liable in tort . . . when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations . . . . [W]here a party is merely seeking to enforce its bargain, a tort claim will not lie.

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 CIV. 1537 (MBM), 2003 WL 23018888, at *16 (S.D.N.Y. Dec. 22, 2003), aff'd, 110 F. App'x 191 (2d Cir. 2004) (quoting New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 288, 662 N.E.2d 763 (1995)) (alteration in original). In other words, "'[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.'" Id. at *15 (quoting William Kaufman Org. Ltd. v. Graham & James, LLP, 269 A.D.2d 171, 173 (1st Dep't 2000)).

Zurich responds that Nagel's fiduciary duties to it were "apart from and independent of promises made." Specifically, Zurich alleges that, as its employee, Nagel owed it fiduciary duties "including but not limited to the duty to act with the utmost good faith and loyalty toward Zurich, the duty of trust and confidence, and the duty to refrain from disclosing or exploiting Zurich's confidential and proprietary information for his own benefit, or to Zurich's detriment." Compl. ¶ 56.

10

Here, too, Zurich has the better of the argument. Under New York law, employees owe fiduciary duties to their employers, independent of any contractual duties, and some such duties survive termination. See, e.g., Am. Fed. Grp., Ltd. v. Rothenberg, 136 F.3d 897, 906 (2d Cir. 1998) ("[E]ven former employees may not misappropriate and utilize confidential information, such as customer lists and other confidential information not generally known to the public, but available only to employees in their endeavors for the company."). Nagel's fiduciary duty not to misappropriate and utilize confidential information is similar to, but independent of, the specific promises Nagel made in the contract, so this claim is not duplicative of the breach of contract claim. For example, the Court might find that Nagel improperly "t[ook] with him" company material, breaching the contract, but did not "misappropriate and utilize confidential information" -- in other words, that he breached the contract without breaching his fiduciary duties. Alternatively, depending on what discovery uncovers, the Court might find that Nagel breached his fiduciary duties without breaching the contract; for example, hypothetically, he might have disclosed sensitive and confidential information that he acquired from Zurich but that does not qualify as "Proprietary Information" under the contract because it is personal in nature; in this way, he might have breached his fiduciary duties without breaching the contract.

Because Zurich's breach of fiduciary duties claim is not "'merely duplicative of [the] breach of contract claim,'" Banco Espirito, 2003 WL 23018888, at *16 (quoting New York Univ., 87 N.Y.2d at 316), both claims will proceed to discovery.

C. Violation of the Defend Trade Secrets Act ("DTSA")

Nagel moves to dismiss the DTSA claim, arguing that Zurich has failed plausibly to allege the existence of a trade secret. Further, he argues that even if some of the documents at issue were construed to be trade secrets, Zurich has not plausibly alleged use or misappropriation of a trade secret.

To prevail on a claim for violation of the DTSA, Zurich must show that it "own[s] a trade secret," 18 U.S.C. § 1836(b)(1); and either that there has been "actual or threatened misappropriation," in which case injunctive relief is authorized, id. § 1836(b)(3)(A), or that there has been "unjust enrichment" or "actual loss caused by the misappropriation of the trade secret," in which case damages are authorized, id. § 1836(b)(3)(B). The statute provides that

> "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if --

12

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

Id. § 1839(3).

Judge Furman has effectively described plaintiff's obligation to plausibly allege the existence of a trade secret:

> Naturally, a DTSA plaintiff has no obligation to reveal its secrets in the complaint simply to prove that they exist. But that does not mean a party can get away with nebulous descriptions at the highest level of generality. To the contrary, a complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation.

TRB Acquisitions LLC v. Yedid, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (internal quotation marks, brackets, and citations omitted); accord Elsevier Inc. v. Doctor Evidence, LLC, No. 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence.") (internal quotation marks and citation omitted).

Here, Zurich alleges that Nagel emailed to himself, among other things, "corporate governance documents, board resolutions,

13

biographical affidavits containing sensitive personal information for Zurich senior executives, and financial reports." Compl. ¶ 29. According to the Complaint, a "competitor could use the information to unfairly compete with Zurich, divert its customers, and undercut its business," and "the disclosure of personal and highly sensitive information of Zurich employees[] [could] compromis[e] Zurich's business reputation and the trust it has cultivated with its personnel." Id. ¶¶ 41-42. These allegations are insufficiently precise to demonstrate the existence of a trade secret under the DTSA. Such "nebulous" categories of documents, like those described by Zurich, do not give rise to a plausible inference that Nagel emailed himself a trade secret.

While this shortcoming conceivably might be cured through an amended pleading, there is another, independent failing that is fatal. Specifically, Zurich has not alleged actual or threatened misappropriation. "Misappropriation" entails "(1) [] acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent." ExpertConnect, LLC v. Fowler, No. 18 Civ 4828 (LGS), 2019 WL 3004161, at *5-6 (S.D.N.Y. July 10, 2019). Nagel was authorized to acquire this information as part of his job, so he did not acquire it by improper means. And the only allegation that Zurich has "disclosed or us[ed] the trade secret without consent," see Expert Connect, 2019 WL 3004161, at

14

*5-6, is that Nagel improperly "used" the trade secret as leverage during settlement negotiations with Zurich itself.[1]

This presents what appears to be a question of first impression: does one "misappropriate" a trade secret for purposes of the DTSA when one uses <u>possession</u> of the trade secret to extort the trade secret's owner, without disclosing, using, or necessarily even accessing the contents of the trade secret? This Court answers that question in the negative. The DTSA requires not just any use of a trade secret, but one that constitutes a "misappropriation." The statute is designed to "defend trade secrets" <u>qua</u> trade secrets, not merely to prohibit extortion or misuse of company property. But Budd's email said nothing about the <u>contents</u> of any Zurich information; he merely offered to return Zurich property in exchange for consideration. Notably, Budd mentioned "provid[ing] assurances" regarding confidential information in the same breath that he mentioned returning the

---

[1] If Zurich means to argue that Nagel improperly "used" trade secrets by emailing documents to himself, that argument does not plausibly state a claim. Zurich's written Proprietary Information policy, which Nagel signed, does not explicitly prohibit employees from emailing documents to their personal email addresses. It is also apparent from the face of the Complaint that Zurich only accuses Nagel of doing so <u>beginning in March 2020</u>, at the outset of the coronavirus pandemic, when most employees had to work at home. Given that emailing documents to oneself does not violate the plain language of the contract, Zurich has not plausibly alleged that Nagel's pandemic-limited practice of emailing documents to himself was an improper "use" of company documents sufficient to constitute "misappropriation" of a trade secret.

"Company Computer." Budd was trying to use the fact that Nagel had Zurich property, of whatever kind, as leverage. If, on the other hand, Nagel had threatened <u>to disclose</u> Zurich's confidential information unless he received consideration, that would imperil the trade secrets and would state a claim. But merely threatening <u>to keep</u> trade secrets, without threatening to use or disclose them, does not give rise to a DTSA claim.

This case can be usefully contrasted with <u>Bramshill Invs., LLC v. Pullen</u>, No. CV 19-18288, 2020 WL 4581827, at *1 (D.N.J. Aug. 10, 2020). Like this case, <u>Bramshill</u> was a suit by a former employer against a former employee. Prior to being hired by the plaintiff employer, the employee had operated a consulting business that competed with the plaintiff employer. When she was hired, she explicitly represented that she "had ceased all operations [of the competitor business], including her [competitor] email account." <u>Id.</u> But this was untrue; she continued to operate an email account linked to her prior, competing business. During her employment, she emailed confidential client lists from her business email account with her new employer to the secret email account she still held with the competitor company. The new employer brought a DTSA claim, and the court denied a motion to dismiss.

This case is distinguishable from <u>Bramshill</u> for two reasons. First, in <u>Bramshill</u>, the plaintiff plausibly alleged the existence

16

of specific trade secrets (i.e., client lists). Second, the former employee allegedly disclosed and used the trade secrets qua trade secrets, by disclosing them to a competitor. Zurich alleges that Zurich was harmed by Nagel's alleged extortion, but not that Nagel harmed or threatened to harm Zurich's trade secrets by using or disclosing them.

For these reasons, the DTSA claim is dismissed.

D. Unjust Enrichment

Finally, Zurich claims that because Nagel falsified his timesheets for years, he was unjustly enriched. "[T]he timesheets showed that Nagel worked from 6:45 a.m. to 9:00 p.m. nearly every work day for months and years. Nagel routinely, and nearly without exception, reported exactly 5.75 hours of overtime worked each day." Compl. ¶ 21. However, Zurich alleges that when it reviewed employee badge records, it learned that the time Nagel spent at the office was inconsistent with the hours reported. Id. ¶ 22. Also, Nagel later admitted that "for more than a week during which [he] reported working from 6:45 a.m. to 9:00 p.m. each day, . . . he was driving from New York to Florida . . . for personal, non-business reasons." Id. ¶ 23. And he "admitted" that during certain Fridays in the summer, when he "reported working until 11:00 p.m.," "he did not actually work the additional hours he reported." Id. ¶ 24. Therefore, Zurich alleges that Nagel

knowingly received unearned compensation and that it would be inequitable for Nagel to retain that compensation.

Nagel moves to dismiss the unjust enrichment claim, arguing that it is "a fraud claim in disguise that does not meet that claim's heightened pleading requirements." Mot. to Strike and Dismiss, ECF No. 14, at 17. The New York Court of Appeals has expressly disapproved the use of an unjust enrichment claim to replace a conventional contract or tort claim:

> [U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

<u>Corsello v. Verizon New York, Inc.</u>, 18 N.Y.3d 777, 790 (2012) (citation omitted).

Zurich argues that <u>Corsello</u> is inapplicable because "Nagel has not established that Zurich's unjust enrichment claim differs from the situations in which the underlying facts do not fit squarely within the ambit of contract or tort, but a vehicle for recovery is nonetheless necessary." Opp. 22 (internal quotation marks omitted).

Nagel is correct: no one reading the Complaint can reasonably deny that, labels notwithstanding, Zurich is accusing Nagel of

18

fraud. New York law provides a fraud cause of action, and Zurich is free to avail itself of that claim, but <u>Corsello</u> teaches that Zurich may not elect to pursue unjust enrichment instead.

On the present record, the Court sees no reason to believe that Nagel would be unable to comply with the heightened pleading requirements applicable to fraud claims. See Fed. R. Civ. P. 9(b). Accordingly, the unjust enrichment claim is dismissed without prejudice to the substance of that claim being re-pleaded, with particularity, as a fraud claim.

For the foregoing reasons, by bottom-line order dated May 7, 2021, the Court held that "[t]he Defend Trade Secrets Act and unjust enrichment claims are dismissed. In all other respects, Nagel's motion is denied. . . . Zurich may file an amended complaint by no later than May 21, 2021." ECF No. 20.[2]

SO ORDERED.

Dated: New York, NY
May 11, 2021

_____
JED S. RAKOFF, U.S.D.J.

---

[2] Although the Court has dismissed the sole federal cause of action, based on the allegations of the Complaint the Court has diversity jurisdiction over the remaining claims.

19