```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
ZURICH AMERICAN LIFE INSURANCE CO.,  :
ZNA SERVICES LLC,                    :
                                     :
          Plaintiffs,                :   20-cv-11091 (JSR)
                                     :
          -v-                        :   OPINION
                                     :
JON NAGEL,                           :
                                     :
          Defendant.                 :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

The Court here assumes the parties' familiarity with the facts and prior proceedings of this case. Plaintiff Zurich American Life Insurance Company ("ZALICO") filed a complaint on December 30, 2020 against a former employee, Jon Nagel, for breach of contract, breach of fiduciary duty, unjust enrichment, and misappropriation of trade secrets under the Defense Trade Secrets Act (DTSA). Complaint, ECF No. 1. A day earlier, Nagel had filed a complaint against Zurich in New York state court alleging age discrimination. In the instant case, the Court previously dismissed the trade secrets claim — the only federal cause of action — for failure to state a claim, but gave Zurich leave to amend the complaint to properly alleged fraud instead of unjust enrichment. Order, ECF No. 20. ZALICO amended the complaint accordingly, added ZNA Services LLC ("ZNA") as a plaintiff, and maintained that even

without the federal cause of action, the Court had subject matter jurisdiction sounding in diversity. Amended Complaint, ECF No. 22 ("Amend. Compl.").

Now before the Court is Nagel's motion to dismiss the amended complaint. By bottom-line order dated July 8, 2021, the Court denied Nagel's motion to dismiss in full. This opinion sets forth the reasons for that order.

**LEGAL STANDARD**

With respect to jurisdiction, the "party [invoking federal jurisdiction] must allege a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998). Because Nagel raises new evidence in support of his motion to dismiss under Rule 12(b)(1), "the district court will need to make findings of fact in aid of its decision." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016).[1]

---

[1] ZALICO and ZNA argue that in deciding Nagel's motion to dismiss for lack of subject matter jurisdiction, the Court must resolve all factual inferences in a light most favorable to them as plaintiffs, citing Schwartz v. Hitrons Sols., Inc., 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019). Pl. Mem. 7. However, Carter, 822 F.3d 47, makes clear that this deference is only afforded in *facial* 12(b)(1) motions, i.e., when the defendant moves based solely on

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 551 (2007). Additionally, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Because this complaint alleges common law fraud, it is also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b), "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996)).

---

the allegations in the complaint, as opposed to *fact-based* 12(b)(1) motions, i.e., when the defendant introduces evidence pertaining to jurisdiction, as is the case here.

**ANALYSIS**

Nagel's motion to dismiss ZALICO's amended complaint raises two challenges: first, that the court lacks subject matter jurisdiction because the parties are not completely diverse, and second, that the fraud claim fails to state a claim upon which relief can be granted. We turn first to the question of the court's subject matter jurisdiction.

I. **Subject Matter Jurisdiction**

A. Diversity Jurisdiction

A district court has subject matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000" between "citizens of different States." 28 U.S.C. § 1332(a). The Supreme Court has long construed this statute to cover only cases of complete diversity, when "there is no plaintiff and no defendant who are citizens of the same State." Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc., 943 F.3d 613, 617 (2d Cir. 2019) (quoting Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998)). As such, the Court must determine the domiciles of both Nagel and ZALICO.

First, Nagel's domicile. "At any given time, a person can only have one domicile." Hai Yang Liu v. 88 Harborview Realty, LLC, 5 F. Supp. 3d 443, 446 (S.D.N.Y. 2014). Nagel has lived in

New York since 1975, maintaining a New York driver's license and memberships in multiple social clubs in New York City. Nagel 6/3/21 Decl. ¶ 2. He relocated to Florida in October 2020, which he claims was to escape the pandemic, and updated his address in Zurich's human resources database to his Florida residence. Id.; Pappas Decl. ¶ 8. His IRS employment forms were also updated to reflect his Florida address. Pappas Decl. ¶ 11. After his short-term lease expired in April 2021, he moved back to New York City. Nagel 6/3/21 Decl. ¶ 2 & Ex. 1.

ZALICO and ZNA argue that in moving to Florida, Nagel changed his domicile to Florida, pointing to the fact that he updated Zurich's database and his IRS forms with his Florida address, and that he was served with the complaint at his Florida residence. Pl. Opp. to Mot. to Dismiss 8-9 ("Pl. Mem."); Pappas Decl. ¶ 8, 9, 11. They suggest that if the relocation were truly temporary, as Nagel claims, he would not have updated his address at all and would simply have had his mail forwarded. Pl. Mem. 8.

The Court disagrees. The party alleging a change of domicile has the burden of proving by clear and convincing evidence the "required . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality." Palazzo v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243-

244 (2d Cir. 1984)).[2] Palazzo makes clear that Nagel's new residence is not itself enough to demonstrate a change of domicile: ZALICO and ZNA must also prove that Nagel intended to change his "true fixed home and principal establishment . . . to which, whenever he is absent, he has the intention of returning." Linardos, 157 F.3d at 948 (2d Cir. 1998) (quoting 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3612, at 526 (2d ed. 1984)). The fact that Nagel alerted his employer of his new residence in Florida by updating Zurich's employee database does not, without more, establish the requisite intent of Nagel to change his true fixed home — there are many practical reasons for an employee to ensure that their employer has accurate information about their physical address, even though the relocation is temporary. Neither do Nagel's IRS forms establish anything about his intent — it was, in fact, Zurich that changed the address on Nagel's IRS forms to Florida, based on the updated information in its employee database. Nagel 6/15/21 Decl. ¶ 2. In light of the short-term nature of Nagel's Florida lease and his subsequent

---

[2] ZALICO and ZNA contend that domicile should be determined with respect to when the action was commenced. Pl. Mem. 9. However, if federal question jurisdiction is "properly asserted at the outset of a case," then "diversity need not be established until [it] becomes necessary to establish federal subject matter jurisdiction." Wright v. Musanti, 887 F.3d 577, 585 (2d Cir. 2018).

relocation back to New York, the Court finds that Nagel's domicile is New York.

Now for ZALICO's domicile. Under 28 U.S.C. § 1332(c)(1), a corporation is domiciled in every state "by which it has been incorporated" and the one state "where it has its principal place of business." The Supreme Court has interpreted "principal place of business" to refer to where "the corporation's high level officers direct, control, and coordinate the corporation's activities," also known as the "nerve center," which is typically the corporation's headquarters. Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010). ZALICO is incorporated in Illinois, Hirs Decl. ¶ 4, which ZALICO and ZNA argue is also its principal place of business. Nagel argues that ZALICO's principal place of business is New York, and that it is thus domiciled in New York as well. To identify ZALICO's principal place of business, we look to the location of its board members and meetings, as well as the location of its high-level officers.

The composition of ZALICO's board is not in dispute. ZALICO's current board is composed of four directors from Illinois (including the chairman), two from New York, one from New Jersey, and one from South Dakota. Id. ¶ 8. The previous year's board was composed of three directors from Illinois (including the chairman), three from New York, one from New Jersey, and one from

South Dakota. Id. The facts about ZALICO's board meetings, however, are partially contested. Nagel offers evidence that ZALICO's board meetings are held in New York. Nagel claims that for the over ten years he has been involved with ZALICO, during which he attended the board meetings, "ZALICO never held a meeting of its Board outside of New York City," although the meetings have been conducted via Microsoft Teams during the pandemic. Nagel 6/3/21 Decl. ¶ 3. He also submitted a document from the 2019 Board meeting indicating that it was held in New York. Nagel 6/3/21 Decl. Ex. 3. However, the Chairman of ZALICO's Board, who is based in Illinois, submitted an affidavit stating that, for the last two years he has been "connecting other Directors located in various states . . . via a virtual platform" for board meetings, and that he understands his predecessor did the same. Hirs Decl. ¶¶ 6-7.

ZALICO's officers work in multiple locations. The President and CEO, General Counsel, Chief Investment Officer, Chief Actuary, and Chief Risk Officer work in ZALICO's New York office. Hogan Decl. Ex. 2. However, the CFO, Chief Information Security Officer, Controller, and Chief Compliance Officer are located in Illinois, with a handful of officers in Connecticut, Washington, Texas, Kansas, and Florida. Id. ZALICO's Illinois office also houses support and operational staff such as legal, human resources, and

IT, and ZALICO's marketing material and tax forms list Illinois as its domicile. Hirs Decl. ¶¶ 5, 9, 11.

ZALICO and ZNA argue that ZALICO's Illinois office is its main headquarters, emphasizing that the Chairman of the Board is based out of Illinois, shared services are housed in the Illinois office, and ZALICO's marketing material and tax forms indicate an Illinois domicile. Pl. Mem. 10-11. They also point out that only twenty of ZALICO's one hundred workers are based in New York. Id.; Hirs Decl. ¶ 10. However, the location of employees and the domicile listed in corporate documents is largely immaterial in determining a corporation's principal place of business because the nerve center test examines where "high-level officers direct, control, and coordinate the corporation's activities." Hertz Corp., 559 U.S. at 80. As such, the only relevant argument ZALICO and ZNA make is that several of ZALICO's board directors (three of eight in 2018-2019 and four of eight in 2020), including its chairman, are based out of Illinois. Hirs Decl. ¶ 8. While relevant to the nerve center test, the fact that the chairman leads the meetings by video conference from his home in Illinois does not establish the locus of ZALICO's decision-making in Illinois. Furthermore, ZALICO and ZNA fail to adequately address the fact that the President and CEO, General Counsel, Chief Actuary Officer, Chief Risk Officer, and Chief Investment Officer are located in

New York — high-level officers whose location is particularly convincing as to the locus of decision-making under the nerve center test given that ZALICO is an insurance company. Nagel's argument that ZALICO is headquartered in New York is only further supported by the fact that a number of board directors are also based in New York. Id.

Because Nagel offers evidence to dispute plaintiffs' jurisdiction allegations, and because the weight of the evidence favors the conclusion that New York is ZALICO's "nerve center," the Court finds that the parties are not completely diverse. Without subject matter jurisdiction sounding in diversity, we turn to whether the Court has and should exercise supplemental jurisdiction.

B. Supplemental Jurisdiction

Because there was federal question jurisdiction at the outset of the case, the Court has supplemental jurisdiction, which grants federal jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Supreme Court has interpreted this to require that the claims "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (superseded by statute on other grounds).

Nagel argues that this Court is precluded from exercising supplemental jurisdiction over the state law fraud claim because, according to Nagel, the fraud claim's only connection with the federal DTSA claim is Nagel's employment relationship to ZALICO. Nagel argues this is insufficient to establish "a common nucleus of operative fact." Def. Supp. Mem. Mot. to Dismiss. 2 ("Def. Supp. Mem"). The Court disagrees. The connection between fraudulent timesheets and taking confidential information is not merely "the employment relationship," but rather the same set of facts involving ZALICO's investigation into Nagel's conduct as an employee. While the claims are distinct, both are instances of alleged misconduct which collectively resulted in his termination. Amend. Compl. ¶ 48. As the claims derive from a common nucleus of operative fact, the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

Having determined that the Court has supplemental jurisdiction in this case, the question remains whether it should exercise it. 28 U.S.C. § 1367(c) permits a court to decline supplemental jurisdiction in certain circumstances, including if "the district court has dismissed all claims over which it had

original jurisdiction."[3] 28 U.S.C. § 1367(c)(3); Valencia v. Sung M. Lee, 316 F.3d 299, 305 (2d Cir. 2003). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, . . . in deciding whether to exercise jurisdiction." Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotations omitted). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 364 (1988) (superseded on other grounds by statute). However, this is not "a mandatory rule to be applied inflexibly in all cases." Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 86 (2d Cir. 2018) (quoting Cohill, 484 U.S. at 350 n.7).

While the factors of judicial economy and convenience, which overlap in this case, cut both ways, they ultimately favor

---

[3] The Second Circuit has held that discretion under 28 U.S.C. § 1367(c)(3) does not apply in cases where the federal claims were dismissed through Fed. R. Civ. Pro. 12(b)(1), which precludes district courts from exercising supplemental jurisdiction over state law claims. However, such discretion is permitted if the claim is dismissed for failure to state a claim through Fed. R. Civ. Pro. 12(b)(6), as is the situation in this case. Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399-400 (2d Cir. 2017).

exercising supplemental jurisdiction. Nagel points out that his age discrimination suit in state court makes parallel litigation in both federal and state court duplicative and potentially contradictory. Def. Supp. Mem. 5. While age discrimination is an altogether different legal claim than breach of contract, breach of fiduciary duty, and fraud, the circumstances surrounding Nagel's termination involve substantial overlap of the factual issues in both cases, making them more efficiently resolved in the same court under the same rules of evidence and discovery. This Court has already set this case on a much swifter schedule than the one in state court. While Nagel filed his claim in state court one day before ZALICO and ZNA's federal suit was filed, his amended complaint was only processed last month and has yet to be answered. Pl. Supp. Opp. to Mot. to Dismiss. 5-6 ("Pl. Supp. Mem."). The only motion filed so far in the state court proceeding has been for change of counsel. Id. In contrast, discovery was scheduled to close in this case on July 30, 2021 and, even with an extension requested by the parties, is now scheduled to close on September 28, 2021 (in order to add the state court claim as a counterclaim here, thus further reducing duplication). Summary judgment motions must be filed by October 12, 2021. Nagel's deposition was scheduled for July 14, 2021 and the parties have already completed initial written discovery, including interrogatories, document production

requests, and requests for admission.[4] Pl. Supp. Mem. 4; Def. Supp. Mem. 4; Pl. Response in Opp. to Def. Supp. Mem. 4. Furthermore, the parties have briefed and argued two motions to dismiss and a motion to strike. Relitigating these procedural issues under state law would undercut the substantial legal work that has already been done in this case. See Raucci v. Rotterdam, 902 F.2d 1050, 1055 (2d Cir. 1990) (finding that "extensive pretrial proceedings prior to dismissal of federal claims supports retention of pendent jurisdiction for reasons of judicial economy and convenience") (citing Financial Gen. Bankshares, Inc. v. Metzger, 680 F.2d 768, 773 & n.9 (D.C. Cir. 1982)).

Though little briefed by the parties, the Court finds the factor of fairness is, on balance, neutral. As noted, duplicative litigation in both state court and federal court is likely to be burdensome to both parties, in particular for Nagel, who has had difficulty obtaining counsel at certain stages in this case. See Nagel Letter, ECF No. 9. The promptness of the Court's resolution

---

[4] Nagel compares this case to Valencia, where a district court's exercise of supplemental jurisdiction was reversed even though "most of the pretrial discovery had been completed." Def. Supp. Mem 4. However, in Valencia the Second Circuit primarily reasoned that the case was still in its "early stages" because no motions or opinions had been considered or issued — in contrast to this case, where two motions to dismiss and a motion to strike will have been decided. Valencia, 316 F.3d at 306-07.

of this case, however, may in fact save resources for both parties, with particular benefit for Nagel.

The factor of comity is similarly inconclusive. If the state law claim at issue turned on a novel or unresolved question, this factor would weigh against exercising supplemental jurisdiction — but that is not the case here. See Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998) (finding that "where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts"). Nagel argues that the fraud claim does in fact involve a novel issue of state law: whether there is reasonable reliance if a supervisor reviewed and approved timesheets. Def. Supp. Mem. 6. The Court disagrees. Reasonableness is an inherently fact-intensive question and the application of well-settled legal principles to new factual circumstances does not constitute a novel issue of law.

Finding that, on balance, the above factors weigh in favor of doing so, the Court will exercise supplemental jurisdiction in this case.

II. **Failure to State a Claim**

Nagel also moves to dismiss the fraud claim for failure to state a claim under Rule 12(b)(6), arguing that plaintiffs have not plausibly alleged that they reasonably relied on Nagel's allegedly inaccurate timesheets. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 979 (N.Y. 2009). Furthermore, reliance must be reasonable, "which cannot be met where . . . a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means." Arfa v. Zamir, 905 N.Y.S.2d 77, 79 (App. Div. 2010) (quoting N.Y.C. Sch. Constr. Auth. v. Koren-DiResta Constr. Co., 671 N.Y.S.2d 738, 740 (App. Div. 1998)); see also ACA Fin. Guar. Corp. v. Goldman, Sachs & Co., 32 N.E.3d 921, 924 (2015) ("This rule has been frequently applied in recent years where the plaintiff is a sophisticated business person or entity that claims to have been taken in.") (internal quotations omitted).

Nagel's primary argument that ZALICO's fraud claim is inadequately pleaded is that it fails to plausibly allege *reasonable* reliance. Specifically, he contends that even on the face of the complaint, ZALICO's failure to notice the discrepancies

-16-

in Nagel's time sheets for eight years — especially in light of ZALICO's implication that the fraud was "evident at a glance" — renders such reliance unreasonable. Def. Mem. in Support of Mot. to Dismiss 9 ("Def. Mem."); Amend. Compl. ¶¶ 29, 40. He points out that the complaint concedes that Nagel's overtime hours were reviewed and approved by a supervisor, a fact which he argues demonstrates that ZALICO "did not remotely exercise 'ordinary intelligence.'" Def. Mem. 10.

However, reasonable reliance is generally a question of fact that should not be determined at the pleadings stage. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 192 n.19 (2d Cir. 2015); Wild Bunch, SA v. Vendian Entm't, LLC, 256 F. Supp. 3d 497, 507–08 (S.D.N.Y. 2017) ("While courts occasionally dismiss fraud claims for failing to allege reliance . . . that is the exception, not the rule."). Nagel cites five cases to the contrary; ultimately none are persuasive. The first, a New York state case that involved different rules for pleading than federal procedure, is inapposite. Tall Tower Capital, LLC v. Stonepeak Partners LP, 105 N.Y.S.3d 424 (App. Div. 2019). Two others are also readily distinguished from the case at hand — the fraud claims in those cases were insufficiently pleaded as a matter of law because the plaintiffs were given written notice that contradicted the oral misrepresentations upon which they relied, a circumstance

that has explicitly been held not to satisfy the element of reliance. Ashland Inc. v. Morgan Stanley & Co., 652 F.3d 333 (2d Cir. 2011); Kosovich v. Metro Homes, LLC, 2009 WL 5171737, 2009 U.S. Dist. LEXIS 121390 (S.D.N.Y. Dec. 29, 2009), aff'd, 405 F. App'x 540 (2d Cir. 2010).

The final two cases are closer to Zurich's claim, but are also unpersuasive. One involved an employer's failure to investigate why an employee was being paid double his salary over the course of several months. Burton v. LABEL, LLC, 344 F. Supp. 3d 680 (S.D.N.Y. 2018). The other involved plaintiffs who purchased resume preparation services based on "expert resume critiques" that were accompanied by ads. Ward v. TheLadders.com, Inc., 3 F. Supp. 3d 151 (S.D.N.Y. 2014) (holding that ordinary intelligence should have discovered that such critiques were merely sales pitches). However, while in retrospect Nagel's timesheets may now look suspicious based on the consistency of his hours over time, the timesheets did not indicate misrepresentation as obviously as ballooned salaries (Burdon) or aggressive advertising (Ward). It is plausible that the circumstances in this case constitute "reasonable reliance," even based on the more rigorous standard for business entities. This is especially true where at this stage, inferences must be resolved in favor of the plaintiffs. For example, Nagel's managerial relationship with his supervisor could

have been particularly trustworthy, or the remote nature of the work could have made it difficult to track employee activity. The Court cannot conclude on these pleadings that reliance was not reasonable.

Moreover, the complaint complies with Rule 9(b)'s heightened pleadings requirements for fraud claims: it describes the statements that were fraudulent (the timesheets), identifies the speaker (Nagel), details where and when the statements were made (on self-reported timesheets broken down by date), and explains why Zurich believed they were fraudulent (Nagel did not actually work when he said he did). Amend. Comp. ¶¶ 25, 26, 31, 32, 33; Eternity Global Master Fund, 375 F.3d at 187. The Court therefore finds that the complaint adequately states a claim for fraud.

## CONCLUSION

For the reasons above, the Court held by bottom-line order on July 8, 2021 that defendant's motion to dismiss is denied in full. ECF No. 35.

Dated:   New York, NY
         July __, 2021                      _____
                                              JED S. RAKOFF, U.S.D.J.