UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
ZURICH AMERICAN LIFE INSURANCE CO.  :
and ZNA SERVICES LLC,               :
                                    :
        Plaintiffs/Counter-Defendants, :        20-cv-11091 (JSR)
                                    :
                -v-                 :        MEMORANDUM ORDER
                                    :
JON NAGEL,                          :
                                    :
        Defendant/Counter-claimant. :
------------------------------------ x
JON NAGEL,                          :
                                    :
        Counter-claimant,           :
                                    :
                -v-                 :
                                    :
CENTRE GROUP HOLDINGS (U.S.)        :
LIMITED, et al.,                    :
                                    :
        Counter-Defendants.         :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

     Now before the Court is the motion of counter-defendants

Zurich Insurance Group Ltd ("ZIG"), Zurich Insurance Company Ltd

("ZIC"), and Zurich Finance Company Ltd to dismiss

defendant/counter-claimant Jon Nagel's counterclaims against them

for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)

and for failure to state a claim upon which relief can be granted

under Fed. R. Civ. P. 12(b)(6). ECF No. 70. Nagel stated in his

opposition brief that he is no longer pursuing his counterclaims

against Zurich Finance Company Ltd, leaving the counterclaims against ZIG and ZIC. See ECF No. 76 at 1, n.1.

As the Court stated by bottom-line order dated November 1, 2021, see ECF No. 86, the motion to dismiss Nagel's counterclaims as to ZIG and ZIC on grounds of lack of personal jurisdiction is granted. However, because the Court recognizes the personal jurisdiction issue is a close one, the Court goes on to reach the 12(b)(6) issue and also grants that motion. Further discovery on jurisdiction is denied as unnecessary, as explained herein. Nagel's oral motion at argument for leave to amend his counterclaims is also denied; having reviewed the materials already presented by Nagel in and attached to his opposition to the instant motion, amendment would not change the Court's result.[1]

## BACKGROUND

Nagel filed his counterclaims on July 23, 2021, alleging age discrimination and retaliation claims under the New York State Human Rights Law ("NYSHRL"), a retaliation claim in violation of

---

[1]  The Court has also reviewed, in addition to the public record, certain materials that the parties filed under seal. With one exception, however, the description of those materials set forth in this opinion is taken from the parties' publicly filed briefs. To the extent this opinion describes the fifth item, the description is taken from redacted portions of the parties' briefs, but those particular portions will now be made public if either party now so requests.

the New York City Human Rights Law ("NYCHRL"), defamation, and tortious interference with employment. ECF No. 26. On September 14, 2021, Nagel amended his counterclaims to add discrimination and retaliation claims under the Age Discrimination in Employment Act ("ADEA"). ECF No. 63 ¶¶ 134-84. The relevant NYSHRL, NYCHRL, and ADEA claims are against both ZIG and ZIC (along with other co-defendants); the defamation and tortious interference with employment claims are against ZIG and other co-defendants (but not against ZIC). Id.

Nagel's counterclaims as to ZIG and ZIC allege as follows:

ZIG and ZIC are foreign business corporations organized under the laws of Zurich, Switzerland, with the same principal place of business in Zurich, Switzerland. SoC (ECF No. 63) ¶¶ 15-16. ZIG is the ultimate parent company of all the subsidiaries named as counter-defendants and a public company traded on the Swiss stock exchange. Id. ¶ 15. ZIC is a subsidiary of ZIG. Id. ¶ 16. The counterclaims repeat as to both entities that "[a]t all relevant times" ZIG and ZIC "met the definition of an 'employer' under all applicable statutes." Id. ¶¶ 15-16.

The counterclaims further allege that Zurich Capital Markets, Inc. ("ZCM"), hired Nagel in 2004, and Nagel was asked to serve as an officer of other entities in a segment of ZCM's business — called Zurich Legacy Services ("ZLS") — that invested and raised

-3-

business capital for subsidiaries of ZIG. Id. ¶¶ 39, 41–42. ZCM in turn owns various other entities (the "ZLS entities") that report directly to ZIG in Switzerland. Id. ¶¶ 43–44. Nagel's work for the ZLS entities required that the board of each entity vote him corporate powers; the boards of each entity accordingly passed resolutions giving Nagel corporate titles and powers. Id. ¶¶ 48–49.

Nagel handled corporate governance for various entities that were shifted from ZLS to a separate business unit, NAL, which focused on life insurance sales in the U.S.; the NAL entities included, among others, plaintiff Zurich American Life Insurance Company ("ZALICO"). Id. ¶¶ 51–53. To carry out his corporate governance responsibilities, the NAL entities appointed Nagel the Assistant Corporate Secretary of ZALICO. Id. ¶ 57. The NAL part of Zurich is distinct from ZLS, "though both pursue policies set forth by [ZIG]"; for legal and regulatory reasons, they do not intermix their business except for sharing some back-office resources like office space. Id. ¶¶ 58–60. All NAL and ZLS entities "ultimately operated their employment policies according to [ZIG]'s Group Governance Principles for Subsidiaries, which delegated certain authority to its subsidiaries to hire, fire, compensate, and control employees." Id. ¶ 61.

In 2011, Nagel's position was eliminated as part of a reorganization of the legal department. Id. ¶ 63. Nagel was re-hired four months later as an hourly employee. Id. ¶¶ 64, 68. He reported to ZALICO's General Counsel. Id. ¶ 65. Nagel had a supervisor on the ZLS side of the business and on the NAL side. Id. ¶¶ 66-67. He was paid by Plaintiff ZNA Services, LLC (an indirect subsidiary of another Zurich holding company entity that was responsible for paying back-office and administrative personnel), on an hourly basis, for work across ZLS and NAL entities. Id. ¶¶ 68-69.

The counterclaims go on to state various examples of alleged age discrimination experienced by Nagel. See id. ¶¶ 71-90. As relevant to this motion, in early 2016 Nagel saw "notices from an officer of [ZIG]" to, inter alia, ZALICO's Board, stating that ZIG would not be required to terminate three of its members who had turned 70, even though the usual policy under ZIG's Group Governance Principles for Subsidiaries was to terminate all officers who reached the age of 70. Id. ¶¶ 85-87.

When, in October 2020, ZALICO sold part of its business to AFLAC, there was discussion of selling ZALICO entirely. Id. ¶¶ 96, 101. Nagel's supervisor told him that even if the NAL entities (which included ZALICO) could no longer continue employing him, that the ZLS entities would continue to keep him employed. Id.

-5-

¶ 101. Nagel's supervisor's "comments demonstrate that, while they both operate according to authority delegated by [ZIG], the NAL and ZLS sides of Zurich's business each have separate power to hire and fire employees." Id.

On October 29 and November 4, an HR consultant for the NAL entities contacted Nagel to discuss several alleged improprieties on his part, including, inter alia, overbooking overtime, using a company credit card for personal purchases, and sending confidential materials to a personal email account. Id. ¶¶ 103-11. On November 5, 2020, ZALICO's General Counsel verbally terminated Nagel in a conversation over Microsoft Teams. Id. ¶ 113. Nagel later received a termination letter on ZIG letterhead. Id. ¶ 116. The ZLS entities terminated Nagel, as well. Id. ¶ 117.

## LEGAL STANDARD

In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint. See, e.g., Town & Country Linen Corp. v. Ingenious Designs LLC, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020).[2] A counter-claimant bears the burden of establishing

---

2    Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

personal jurisdiction over a counter-defendant. See MacDermid, Inc. v. Deiter, 702 F.3d 725, 728 (2d Cir. 2012). The counter-claimant must allege facts that, if true, would establish a prima facie case of personal jurisdiction "notwithstanding any controverting presentation by the moving party." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013) (per curiam). A prima facie case includes showing that (1) there was proper service, (2) there is a statutory basis for personal jurisdiction, and (3) "the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59–60 (2d Cir. 2012). Pleadings and affidavits should be construed "in the light most favorable to [the counter-claimant], resolving all doubts in [the counter-claimant's] favor." Dorchester Fin. Sec., 722 F.3d at 85. This does not mean, however, that the court accepts as true "a legal conclusion couched as a factual allegation," Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998), nor allegations controverted by the defendant's affidavits that place the prima facie case in issue. MacDermid, 702 F.3d at 727.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the counterclaim must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. <u>See Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 557 (2007). If counter-claimants have "not nudged their claims across the line from conceivable to plausible, their [counterclaims] must be dismissed." <u>Twombly</u>, 550 U.S. at 570.

### DISCUSSION

We first address the motion to dismiss Nagel's counterclaims against ZIC and ZIG on the grounds that the Court lacks personal jurisdiction. The Court finds that Nagel has not made out a prima facie case for personal jurisdiction over either ZIG or ZIC under N.Y. C.P.L.R. § 302(a)(1). While it is a close question, the Court also finds that ZIG and ZIC lack the necessary minimum contacts with the U.S. for the Court's exercise of specific jurisdiction under Federal Rule of Civil Procedure 4(k)(2) to comport with due process. Accordingly, the Court grants the 12(b)(2) motion to dismiss the counterclaims.

However, because the Court recognizes the personal jurisdiction issue is a close one, the Court goes on to reach the 12(b)(6) issue and also grants that motion. The Court finds that

Nagel did not allege facts sufficient to state a counterclaim under the ADEA, NYSHRL, or NYCHRL.

## I. Personal Jurisdiction

ZIG and ZIC first move to dismiss Nagel's counterclaims under Rule 12(b)(2) for lack of personal jurisdiction. Nagel argues that the Court has specific personal jurisdiction over ZIG and ZIC under the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1), and under Federal Rule of Civil Procedure 4(k)(2).[3] He argues that at minimum, jurisdictional discovery is warranted. The Court addresses each argument in turn.

### A. *New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(1)*

Nagel argues that the Court has specific personal jurisdiction over ZIC and ZIG under § 302(a)(1) of New York's long-arm statute. To establish specific personal jurisdiction under § 302(a)(1), the plaintiff must establish two requirements: (1) the counter-defendant must have "transacted business within the state," and (2) "the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). A claim arises from a particular transaction "when there is some articulable nexus between the

---

[3]   Both parties agree that the Court lacks general jurisdiction over ZIC and ZIG. See ECF No. 76 at 1, n.2.

business transacted and the cause of action sued upon." Id. There must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168–69 (2d Cir. 2013).

Nagel's argument is that "because Zurich Switzerland employed Nagel," he has satisfied the "transacted business" prong, based on the facts allegedly showing that ZIG and ZIC controlled the HR and employment policies of their subsidiaries such that they effectively employed Nagel under a single integrated enterprise or joint employer theory. Nagel argues that these same facts demonstrate a sufficient nexus between the transacted business -- according to Nagel, ZIG and ZIC's employment of Nagel -- and Nagel's termination.

Nagel's allegations that ZIG and ZIC employed Nagel boil down to (1) the conclusory allegation in his counterclaims that ZIG and ZIC "[a]t all relevant times" "met the definition of an 'employer' under all applicable statutes," ECF No. 63 ¶¶ 15–16; and (2) the facts that Nagel alleges show ZIG and ZIC effectively employed Nagel based on a single integrated enterprise or joint employer theory. Neither are sufficient to meet the requirements of § 302(a)(1). To be sure, discrimination claims against an employer would be sufficiently related to employment that occurred in New

York, but Nagel only alleges that ZIG and ZIC employed him based on a single integrated enterprise or joint employer theory. Whether plausibly alleging such a theory of *liability* supports the exercise of personal jurisdiction is a separate question. See Henao v. Parts Auth., LLC, No. 19-CV-10720 (LGS), 2021 WL 2784528, at *3 (S.D.N.Y. July 2, 2021) ("The cases holding that the single integrated enterprise theory is one of liability and not jurisdiction are persuasive."); see also Tese-Milner v. De Beers Centenary A.G., 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) (rejecting personal jurisdiction under Rule 4(k)(2) when, "the Court has not encountered, and Plaintiff does not offer, any legal support for the contention that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law").

Accordingly, the Court finds that Nagel has not made out a prima facie case of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1). Because Nagel has not established that jurisdiction is proper under the statute, the Court need not consider the due process analysis of ZIG and ZIC's contacts with New York specifically. We thus turn to a consideration of personal jurisdiction over ZIC and ZIG under Rule 4(k)(2).

## B. Federal Rule of Civil Procedure 4(k)(2)

Nagel also argues that the court can properly exercise personal jurisdiction over ZIG and ZIC under the federal long-arm

statute, Rule 4(k)(2). To establish personal jurisdiction under Rule 4(k)(2), a plaintiff, or here, a counter-claimant, must show that his claim arises under federal law, that the counter-defendant is not subject to the jurisdiction of any state court of general jurisdiction, and that the federal court's exercise of personal jurisdiction over the counter-defendant is consistent with the Constitution or other federal law. Fed. R. Civ. P. 4(k)(2).

Here, ZIG and ZIC do not dispute that Nagel has satisfied the first two requirements under Rule 4(k)(2): Nagel alleges a claim under the ADEA, and ZIG and ZIC do not argue that they are subject to the jurisdiction of any state court of general jurisdiction. We thus focus on the third requirement: as relevant here, whether the court's exercise of personal jurisdiction over ZIG and ZIC is consistent with the due process protections established under the U.S. Constitution.

"[S]pecific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction." In re Roman Catholic Diocese Inc., 745 F.3d 30, 38 (2d Cir. 2014) (per curiam); see also Vasquez et al. v. Hong Kong and Shanghai Banking Corp., Ltd., et al., 477 F.Supp.3d 241, 251-52 (S.D.N.Y. 2020) ("Specific personal jurisdiction, in contrast [to general personal jurisdiction], subjects a defendant to suit only on claims that arise out of or

relate to the defendant's conduct in the forum."); see also Daimler AG v. Bauman, 571 U.S. 117, 126-27 (2014).

"The specific jurisdiction due process inquiry proceeds in two steps." Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG, 277 F. Supp. 3d 521, 588 (S.D.N.Y. 2017). First, the Court evaluates, based on the totality of the circumstances, the quality and nature of the defendant's contacts with the forum. See Licci, 732 F.3d at 170. A court's "exercise of specific jurisdiction depends on in-state activity that gave rise to the episode-in-suit." Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016). For the exercise of jurisdiction to be consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum." Walden v. Fiore, 571 U.S. 277, 284 (2014).

A plaintiff can demonstrate these sufficient "minimum contacts" by showing that the defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." Licci, 732 F.3d at 170. If the court finds that the defendant purposefully established minimum contacts within the forum state, contacts that give rise or relate to the claims at issue, then the court considers these contacts in light of other factors to determine whether asserting

personal jurisdiction would comport with fair play and substantial justice. Licci, 732 F.3d at 170.

The personal jurisdiction analysis under Rule 4(k)(2) mirrors the standard personal jurisdiction analysis set out above, except the question of whether exercising personal jurisdiction comports with due process depends on whether the non-resident has sufficient minimum contacts with the United States as a whole. See George Moundreas & Co. S.A. v. Jinhai Intelligent Mfg. Co., No. 20-CV-2626 (VEC), 2021 WL 168930, at *11 (S.D.N.Y. Jan. 18, 2021). If there are sufficient minimum contacts, then the Court considers whether establishing personal jurisdiction "is reasonable under the circumstances." Id.

The Court thus turns to a discussion of whether ZIG and ZIC possess sufficient minimum contacts with the U.S. relating to Nagel's claims. "Where the claim arises out of, or relates to, the defendant's contacts with the forum — i.e., specific jurisdiction is asserted — minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 82 (2d Cir. 2018). Here, while Nagel wholly abandons (for these purposes) the allegations set forth in his counterclaims themselves, he provides extrinsic evidence attached

-14-

to his opposition brief. But even then, as discussed further below, Nagel has not alleged sufficient minimum contacts to make out a prima facie case of specific personal jurisdiction over either ZIG or ZIC with regard to any of the employment discrimination claims.

At the outset, it should be noted that the counter-defendants provide, by affidavit of ZIC's Corporate Secretary attached to their motion to dismiss, ECF No. 73, the following facts, none of which Nagel disputes:

ZIG is a holding company organized under Swiss law, with an office and principal place of business in Switzerland. ECF No. 73, Ex. 4 ¶ 4. ZIG is not organized New York law, does not maintain its principal place of business or headquarters in New York, and has no offices in New York. Id. ¶¶ 5-6. ZIG is a holding company, not an insurance company, and so does not sell or issue insurance policies or any other product in New York. Id. ¶ 7. ZIG does not pay taxes in or to the State of New York. Id. ¶ 8. ZIG does not own or lease any real or personal property in New York. Id. ¶ 9. ZIG as a holding company does not itself have any employees. Id. ¶ 25. Nagel did not at any time serve on ZIG's board. Id.

ZIC is an insurance and holding company organized under Swiss law, with an office and principal place of business in Switzerland. Id. ¶ 12. ZIC is not organized New York law, does not maintain its principal place of business or headquarters in New York, and has

-15-

no offices in New York. Id. ¶ 13.  ZIC is not licensed or registered to sell insurance products in New York. Id. ¶ 14. ZIC does not pay taxes in or to the State of New York. Id. ¶ 15. ZIC does not own or lease any real or personal property in New York. Id. ¶ 16. ZIC's HR records show that Nagel was not at any time an employee of ZIC and never served on ZIC's board. Id. ¶ 25.

Nagel relies on the Supreme Court's recent decision in Ford Motor Company v. Montana Eighth Jud. Dist. Ct. for the proposition that minimum contacts is not a causal inquiry, but that a claim need only "relate to" the corporation's in-forum activities. 141 S. Ct. 1017, 1026 (2021). In Ford, the Supreme Court considered whether state courts in Montana and Minnesota had specific personal jurisdiction over Ford in product-liability suits stemming from car accidents in those states involving Ford vehicles. Id. at 1022. Ford regularly conducted business in both states, and had advertised, sold and serviced the vehicle model that was involved in the accidents, in both states, for many years. The Court rejected Ford's argument that specific jurisdiction was proper in the state only if the particular vehicle involved in the accident was designed, manufactured, or sold in that state. Id. at 1026. Ford affirmed that specific personal jurisdiction requires the claims to "arise out of or relate to the defendant's contacts with the forum." Id. at 1025. While the Court held that this did not

require that the claim came about because of the defendant's conduct, it further held that "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Id. at 1026.

Here, "real limits" require that Nagel's allegations of ZIG and ZIC's contacts be more than remotely related to his employment discrimination claims and termination. Nagel is correct to argue that he need not allege that ZIG and ZIC themselves fired him to allege a prima facie case of specific personal jurisdiction. But he must allege contacts by ZIG and ZIC that "relate to" his employment discrimination claims more than remotely to satisfy the Supreme Court's instruction that the phrase must incorporate "real limits." In other words, while it is not necessary that the contacts be causally related to a claimant's claims, they still must be related to these claims in some less than trivial way if the words "relate to" are to have any real meaning.

Initially, Nagel sought to satisfy this requirement by making several allegations as to minimum contacts in his counterclaims. These, however, are insufficient to make out a prima facie case of personal jurisdiction both because they are conclusory assertions when compared to the actual documents to which he cites, and because he effectually abandoned them in his subsequent briefing papers as bases for jurisdiction.

First, the counterclaims allege that ZIG had a policy that subsidiaries were to terminate board members when they reached the age of 70, SoC (ECF No. 63) ¶¶ 85-87, and, inferentially, that he was a victim of this policy, id. ¶¶ 102, 110, 113. But ZIC and ZIG's Organizational Rules show that (a) the policy did not by its terms apply to Nagel, and (b) that it was not in effect when Nagel was terminated. ECF No. 73-1. ZIC and ZIG's Organizational Rules from 2018 stated that a board member may not serve for more than twelve consecutive terms and that at the time of election or re-election a board member shall not yet have passed his 72nd birthday, though in "exceptional circumstances" the board can extend both of those limits. Id. This applied only to ZIG and ZIC's board members, all of whom were independent directors. Id. A copy of the 2019 Organization Rules of ZIG and ZIC further show this rule is no longer in effect. Id.

Next, the counterclaims allege that "[a]t all relevant times" ZIG and ZIC "met the definition of an 'employer' under all applicable statutes." ECF No. 63 ¶¶ 15-16. This is a formulaic recitation of an element of a cause of action and totally conclusory. See Twombly, 550 U.S. at 557.

Finally, the counterclaims allege that the termination letter Nagel received was on ZIG letterhead. Id. at ¶¶ 85-87, 116. But Nagel's allegation that the termination letter was on ZIG

-18-

letterhead is insufficient to support the assertion that ZIG fired him or had a role in his termination when the termination letter does not refer to ZIC or ZIG and states that "[t]his letter confirms your termination from Zurich North America Legal Services." ECF No. 22-2. The signature block of the letter writer further confirms that he was General Counsel of Zurich North America Life. Id.

Perhaps recognizing the insufficiency (and seeming inaccuracy) of these allegations, Nagel's opposition brief substitutes certain new allegations described below. But these additional contacts are too remotely "related to" Nagel's employment discrimination claims to support exercising specific personal jurisdiction over ZIC or ZIG in this case.

Nagel alleges that ZIG's Head of Litigation and Investigations worked in New York and reported directly to ZIG in Switzerland. See ECF No. 76 at 10; Crain Decl. (ECF Nos. 78-19, 78-5), Exs. 19, 5. But Nagel does not connect this to his employment discrimination claims, and the other evidence provided by the parties indicates that this employee did not play any role in the investigation into Nagel or his termination.

Nagel also alleges that he worked on a central ZIG database that involved conference calls with Switzerland. See ECF No. 76 at 11; Nagel Decl. (ECF No. 79) ¶¶ 1, 4. But he does not allege this

work was tied to his termination or otherwise to his employment discrimination claims.

Nagel next alleges that he attended meetings with ZIG's General Counsel when the General Counsel visited New York City. See ECF No. 76 at 3; Nagel Decl. (ECF No. 79) ¶¶ 6-7. It would render the minimum contacts analysis meaningless to find that ZIG purposefully avails itself of the U.S. forum for any claim relating to employment at its subsidiaries if its employees travel to the United States to conduct business that is not related to the claims at issue. Nagel does not even argue that his age discrimination in employment claims relate to this ZIG employee traveling to the U.S. and meeting with him.

Nagel further alleges that ZIG set various policies for subsidiaries. See ECF No. 76 at 10. Some policies bear no relation to Nagel's alleged age discrimination or firing, including COVID-19 policies and benefits or bonus programs. ZIG has a Code of Conduct that its subsidiaries are required to follow. See ECF No. 76 at 10. While the Code sets forth particular relationships between ZIG and its subsidiaries, they are not related to Nagel's alleged age discrimination or firing. Nagel was fired for allegedly violating the fraud policy that was part of the Code of Conduct that ZIG required subsidiaries to follow. See ECF No. 76 at 13; Crain Decl. (ECF No. 78-9), Ex. 9. This connection to what Nagel

terms the "pretextual reason" for his termination is too attenuated to find that ZIG reached out to the U.S. so as to constitute purposeful availment.

Nagel, still further, alleges that ZIC awarded him bonuses in 2015, 2017, and 2018. See ECF No. 76 at 11; Crain Decl. (ECF Nos. 78-7, 78-8), Exs. 7-8. The cited exhibits are letters with the Zurich logo and LinkedIn or company professional profiles of the people who signed the letters, see id.; it is not clear that the Zurich logo is specific to ZIC or ZIG or that the people who signed the letters were employed by ZIC or ZIG as opposed to other Zurich entities. Nagel does not dispute that his paychecks came from ZNA, not ZIC or ZIG.

Nagel does, however, provide in his briefs two other allegations that make the question of ZIG and/or ZIC's minimum contacts with the U.S. for purposes of exercising personal jurisdiction a closer call.

First, Nagel alleges that a ZIC employee issued a disciplinary warning via email to Nagel's supervisor regarding the supervisor's approval of Nagel's allegedly falsified time sheets. See ECF No. 76 at 10; Crain Decl. (ECF No. 78-2), Ex. 2. Nagel makes no argument that this directly relates to his employment discrimination claims or termination, but argues that if ZIC and ZIG were at all related to discipline at the U.S. subsidiaries, this would be a sufficient

minimum contact "relating to" his counterclaims for purpose of specific jurisdiction. However, the Court concludes that sending an email with a warning to a senior subsidiary employee is does not closely enough relate to the subsidiary's separate termination of a lower-level employee, and Nagel makes only conclusory allegations, unsupported by the cited exhibits, that ZIG or ZIC had disciplinary authority to fire lower-level employees at the subsidiaries, or, indeed, to fire any subsidiary employees at all.

Second, Nagel alleges that the U.S. subsidiary employees who investigated and fired Nagel provided information to their superiors at ZIC, characterizing this as ZIG and ZIC "overseeing" and "directing" Nagel's investigation and firing. See ECF No. 76 at 12. ZIG and ZIC provide deposition testimony that the superiors did not play any role in the investigation of Nagel or his termination. See Mancino Decl. (ECF No. 85) Ex. 1. While the standard at this stage favors Nagel, this is not enough to push the allegation that ZIG and ZIC had a role in his termination from conceivable to plausible, especially when set against Nagel's own allegations that the U.S. subsidiaries had the authority to hire and fire him. See Twombly, 550 U.S. at 570 (noting that if plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").

In short, the Court finds that Nagel has not made sufficient factual allegations about ZIG or ZIC's minimum contacts with the U.S. to make out a prima facie case for exercising specific personal jurisdiction over either ZIG or ZIC under Rule 4(k)(2). As such, we need not address the second prong of the inquiry of whether exercising personal jurisdiction would be reasonable under the circumstances.

### C. Jurisdictional Discovery

Whether to allow jurisdictional discovery is within the court's discretion. See Jazini, 148 F.3d at 186. Nagel argues that jurisdictional discovery is the appropriate remedy where there is a factual dispute about the role of a parent company in the operations of its subsidiaries. See Tese-Milner, 613 F. Supp. 2d 404. Nagel also notes that he has a discovery plan ready, pointing to the discovery requests he served on ZIG and ZIC on October 12, 2021, and identifying no fewer than 65 requests that he asserts are targeted toward jurisdiction. See ECF No. 76 at 18; Crain Decl. (ECF No. 78-20) Ex. 20, ¶¶ 19-35, 38-44, 46-63.

ZIG and ZIC argue that jurisdictional discovery is a "pointless exercise" if the complaint can be dismissed for failure to state a claim. See SPV OSUS Ltd. v. AIA LLC, No. 15-CV-619 (JSR), 2016 WL 3039192, at *5 (S.D.N.Y. May 26, 2016). ZIG and ZIC also note that Nagel's discovery plan does not account for

procedural difficulties of obtaining information from two Swiss entities responding to 65 discovery requests.

The Court denies Nagel's request for jurisdictional discovery as unnecessary. Nagel's requests, see Ex. 20, ECF No. 78-20, are not narrow; they instead appear to be an attempt to conduct discovery that goes as much to the merits as it does to jurisdiction. See Sonterra, 277 F.Supp.3d at 599 (rejecting request for jurisdictional discovery). As the court noted in Sonterra, "while plaintiffs claim to seek 'limited' discovery, an examination of what they hope to uncover shows that their request is in fact quite broad . . . . This is far from a narrow request aiming to resolve, say, a question of whether a defendant maintains an office in the forum, but constitutes instead an attempt to gain broad discovery that goes as much to the heart of plaintiffs' claims on the merits as it does the jurisdictional issues". Id. Nagel himself acknowledges that jurisdictional discovery and discovery on the merits are intertwined. See ECF No. 76 at 18. In any case, because, as discussed further below, the Court also grants the motion to dismiss for failure to state a claim, the Court denies the request for jurisdictional discovery as unnecessary and irrelevant.

## II.    Failure to State a Claim

ZIG and ZIC also move to dismiss Nagel's counterclaims under Rule 12(b)(6) for failure to state a claim on the three remaining counterclaims under the ADEA, NYSHRL, and NYCHRL.[4] They argue, in essence, that Nagel has not alleged facts sufficient to find that ZIG and ZIC are Nagel's employers, and thus they cannot be liable under the ADEA, NYSHRL, or NYCHRL. Unlike the jurisdictional motion, this motion is governed by the four corners of the counterclaims, which, the Court agrees, fail to plead the necessary elements.

Nagel, however, requests that the Court convert the 12(b)(6) motion to a motion for summary judgment because both parties submitted materials extrinsic to the pleadings. See ECF No. 76 at 19. As the Court announced at oral argument, the Court will not convert the 12(b)(6) motion to one for summary judgment where the Court can resolve the motion to dismiss on the face of the pleadings.[5] At most, the extrinsic materials should be considered

---

[4]    Nagel is no longer pursuing his defamation and tortious interference with employment claims against ZIG (which he did not even bring against ZIC). See ECF No. 76 at 19, n.7. This leaves only the claims under the three antidiscrimination statutes against ZIG and ZIC.

[5]    The Court may, however, consider, as ZIG and ZIC urge, the aforementioned corporate policies without considering them as extrinsic evidence, because Nagel heavily relies on their "terms

only on Nagel's fallback motion to amend the pleadings, which the Court also denies.

The Court first addresses the ADEA claims, then turns to the NYSHRL and NYCHRL claims.

### 1. ADEA

The ADEA applies to private employers with more than 20 employees. See 29 U.S.C. § 630(b). Here, ZIG and ZIC argue that Nagel's counterclaims do not sufficiently allege that either ZIG or ZIC is Nagel's employer for purposes of a claim under the ADEA.

First, ZIG and ZIC argue that the counterclaims do not plausibly allege any interactions between ZIG and ZIC and the U.S. entities that would suggest ZIG and ZIC were Nagel's employer. While they may state so in conclusory fashion, they do not allege that either ZIG or ZIC was involved in Nagel's hiring or supervision or evaluation. Indeed, the counterclaims affirmatively state that the U.S.-based subsidiaries, not ZIG or ZIC, had the authority to "hire, fire, compensate, and control employees" Id.

---

and effect" in bringing his discrimination claims. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."); see also Abdou v. Mahany, No. 19-CV-1824 (PAE), 2021 WL 2650069, at *1 n.1 (S.D.N.Y. June 28, 2021). The Court may also consider Nagel's termination letter as incorporated by reference, particularly when it is attached to the complaint in the underlying action.

¶ 61. The counterclaims also state that Nagel reported to a ZNA employee who performed services for ZALICO, not to a ZIG or ZIC employee. Id. ¶ 65. Finally, the counterclaims state that Nagel worked for a variety of the Zurich subsidiaries, naming each, see id. ¶¶ 39, 49, 50, 57, 69, but notably not including either ZIG or ZIC.

As to corporate policies, the counterclaims, as noted, allege that ZIG had a policy that subsidiaries were to terminate board members when they reached the age of 70, id. ¶¶ 85-87, and inferentially, that he was a victim of this policy, id. ¶¶ 102, 110, 113. But here the Court can consider the actual policy, set out in ZIG and ZIC's Organizational Rules, as integrated into the counterclaims, see Chambers, 282 F.3d at 153, and it shows that the policy did not by its terms apply to Nagel, and that it was not in effect when Nagel was terminated. See ECF No. 73-1. In any case, "the fact that a subsidiary adopted policies promulgated by its parent is insufficient to show that the parent exercised centralized control over the subsidiary's employees." Benzinger v. Lukoil Pan Americas, LLC, 447 F. Supp. 3d 99, 135 (S.D.N.Y. 2020).

Further, while the counterclaims allege, as noted, that "[a]t all relevant times" ZIG and ZIC "met the definition of an 'employer' under all applicable statutes," ECF No. 63 ¶¶ 15-16, such a formulaic recitation of an element of a cause of action is

not sufficient to survive a motion to dismiss. See Twombly, 550 U.S. at 557.

Finally, the counterclaims allege that the termination letter Nagel received was on ZIG letterhead. Id. at ¶¶ 85-87, 116. But again, as discussed above, Nagel's allegation that the termination letter was on ZIG letterhead is insufficient to support the assertion that ZIG fired him or had a role in his termination when the termination letter does not refer to ZIC or ZIG and states that "[t]his letter confirms your termination from Zurich North America Legal Services." ECF No. 22-2. The signature block of the letter writer further confirms that he was General Counsel of Zurich North America Life. Id.

It is thus clear that the counterclaims do not adequately allege that either ZIG or ZIC was Nagel's direct employer. But Nagel's fallback position is that either ZIG and/or ZIC are part of a single integrated enterprise that includes the U.S. subsidiaries. When courts consider whether two or more entities such as a foreign parent and the American corporations form a single integrated enterprise, they consider "(A) interrelation of operations, (B) common management, (C) centralized control of labor relations, and (D) common ownership or financial control, of the employer and the corporation." 29 U.S.C. § 623; see also Arculeo v. On-Site Sales & Mktg, LLC, 424 F. 3d 193, 197-98

(2d Cir. 2005). But this, again, is not adequately alleged by the counterclaims.

For his "integrated enterprise" argument, Nagel chiefly relies on the counterclaims' allegation that the aforementioned ZIG and ZIC policies applied to subsidiaries requiring board members be terminated when they reached age 70. But, as discussed above, if one considers the actual policy, it is clear on its face that the policy only applies to ZIG and ZIC board members, not to the subsidiaries. Nagel also once again points to the fact that his termination letter was on ZIG letterhead. But, as discussed above, the letter on its face does not provide any indication that ZIG or ZIC was his employer; in fact, it indicates the contrary. And, as noted, the counterclaims do not allege that Nagel was hired, supervised, or evaluated by some integrated enterprise of which either ZIG or ZIC was a part. See, e.g., Chui Fan Kwan v. Sahara Dreams Co II Inc., No. 17-CV-4058 (RA), 2018 WL 6655607, at *3 (S.D.N.Y. Dec. 19, 2018).

Because Nagel has not made sufficient factual allegations that either ZIC or ZIG was his employer for purposes of the ADEA, he has failed to state a claim under the ADEA upon which relief can be granted.

## 2. NYSHRL and NYCHRL

A closely similar failing applies to Nagel's other counterclaims. When courts determine whether an entity is an employer under the NYSHRL and NYCHRL, they consider whether the alleged employer (1) had the power to select and engage the employee, (2) paid the salary or wages to the employee, (3) had the power to dismiss the employee, and (4) had the power to control the employee's conduct. See Robins v. Max Mara, U.S.A., Inc., 923 F. Supp. 460, 470 (S.D.N.Y. 1996) (finding Italian defendant company was not employer where its U.S. subsidiary was in charge of hiring and firing decisions). Most important is whether the alleged employer "exercised control over the employee's conduct and the incidents of his employment." Id. "Mere influence over general employee conduct through the publication of personnel manuals does not satisfy this test" of whether the parent company had the power to control the conduct of the subsidiary's employees. See Houston v. Fidelity, No. 95-CV-7764 (RWS), 1997 WL 97838, *13 (S.D.N.Y. Mar. 6, 1997).

By these standards, the counterclaims do not even come close to plausibly alleging that ZIG and/or ZIC was Nagel's employer. They do not allege that ZIG or ZIC supervised his work, paid his wages, or controlled his day-to day job duties. In fact, Nagel's counterclaims allege that it was the U.S. subsidiaries that had

control over hiring and firing of their employees. SoC (ECF No. 63) ¶ 61. The allegation about the discriminatory policy (a) did not exist at the time of Nagel's termination, (b) only applied to ZIG and ZIC, and thus did not apply to Nagel, and (c) such a policy does not satisfy the employer test. See Houston, 1997 WL 97838, at *13.

So, once again, the counterclaims fail to adequately allege against ZIG and ZIC an essential element of these claims, to wit, that one or both were his employer.

Perhaps anticipating these difficulties, Nagel notes in his opposition brief that he would seek leave to amend his counterclaims to add allegations based on what he lays out in his opposition brief and provides in the attached declaration and exhibits, and he reiterated this motion orally at argument. For reasons already detailed above, the Court, having reviewed the attached declaration and exhibits, as well as the other arguments made in Nagel's opposition to the motion to dismiss, finds that amending the counterclaims to include those allegations would not change the result. Nagel's motion for leave to amend his counterclaims is denied.

**CONCLUSION**

For the aforementioned reasons, the Court grants in full ZIG and ZIC's motion to dismiss all of Nagel's counterclaims against them. The Clerk is directed to close the entry at docket number 70.

SO ORDERED.

Dated:   New York, NY
         November 10, 2021

JED S. RAKOFF, U.S.D.J.